**Willy DREYFUS, Plaintiff-Appellant,**

v.

**August VON FINCK and Merck, Finck & Co., Defendants-Appellees.**

**No. 194, Docket 75–7135.**

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1975.

Decided April 6, 1976.

Eric Schnapper, New York City (John R. Horan, New York City, of counsel), for plaintiff-appellant.

William Schurtman, New York City (Walter, Conston, Schurtman & Gumpel, P. C., Alan Kanzer, New York City, of counsel), for defendants-appellees.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

The judgment appealed from dismissed the complaint of a Swiss citizen and resident seeking recovery from West German citizens and residents for allegedly wrongful confiscation of property in Nazi Germany in 1938. The action was commenced in the Southern District of New York in 1973 by attaching certain of defendants' assets in New York City.

Plaintiff, a Jew and former resident of Germany, was forced to emigrate from that country to Switzerland and sold defendants his interest in the banking firm of J. Dreyfus & Co., allegedly under duress and at a price which was one and one-half million dollars below its actual value. Following World War II, plaintiff sought additional compensation from the defendants, and, in 1948, settlement was agreed upon. This settlement was never consummated, allegedly because of wrongful repudiation by defendants; and plaintiff then sought relief in a Restitution Court, or "Chamber", established under the aegis of the United States Military Command in Germany. In 1951, while the decision of this tribunal was on appeal in the Court of Restitution Appeals, a second settlement agreement was reached in open court; and plaintiff's petition was thereupon dismissed. The consideration recited in this agreement, four hundred ninety thousand German marks, was paid.

Plaintiff predicated his cause of action below upon both the original taking of his property and defendants' alleged repudiation of the 1948 settlement agreement. He alleged the existence of Federal jurisdiction under 28 U.S.C. § 1332 upon an asserted diversity of citizenship, and under 28 U.S.C. §§ 1331 and 1350 because defendants' conduct allegedly violated four treaties or pacts to which the United States was a party or adherent—the Hague Convention,[1] the Kellogg-Briand Pact,[2] the Versailles

1. Hague Convention No. IV of October 18, 1907, 36 Stat. 2277.

2. Kellogg-Briand Peace Pact, 46 Stat. 2343 (1928).

Treaty[3] and the Four Power Occupation Agreement.[4]

Defendants promptly moved pursuant to Fed.R.Civ.P. 12(b) to dismiss the complaint, asserting, among other grounds, lack of subject matter jurisdiction.[5] The parties conceded on oral argument that there was no diversity of citizenship under § 1332. However, the District Court held that, because a colorable claim was made under the above mentioned treaties, it had jurisdiction under §§ 1331 and 1350 to determine whether the complaint stated a cause of action on which it could grant relief. The District Court then ordered the complaint dismissed, because none of the treaties relied upon by plaintiff conferred upon him any personal right of recovery and because the "Act of State" doctrine precluded the court from inquiring into the alleged forceful transfer of plaintiff's property to defendants.

Plaintiff moved for reargument and rehearing pursuant to Rule 9(m) of the General Rules of the Southern District, contending that he had not had an opportunity to brief and argue the sufficiency of his complaint and that the Act of State doctrine, not having been raised as a defense, should not have been considered. This motion was granted, and the District Court's original decision was modified on reargument to permit plaintiff to file an amended complaint setting forth the specific provisions of the several treaties upon which plaintiff based his claim. An amended complaint was served on July 24, 1974, and defendants moved again to dismiss.

The District Judge, in a memorandum opinion dated January 2, 1975, reviewed the several treaties in greater detail and again concluded that no private right of recovery for defendants' allegedly tortious conduct was provided for in any of them. He also reviewed the recent decisions of this Court and of the Supreme Court dealing with the Act of State doctrine[6] and the so-called "Bernstein exception" and concluded that Judge Learned Hand's opinion in *Bernstein v. Van Heyghen Freres Societe Anonyme*, 163 F.2d 246 (2d Cir.), *cert. denied*, 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357 (1947),[7] continued to state the correct application of that doctrine. The District Judge did not, however, rest his January 2 decision on that doctrine, because he felt that the complaint failed to state a claim on which relief could be granted.

Notice of appeal to this Court was served on February 18, 1975. On May 15, 1975, plaintiff moved to have the case remanded to the District Court because his attorney, in preparing the brief on appeal, had concluded that Military Law 59, "Restitution of Identifiable Property", 12 Fed.Reg. 7983 (1947), promulgated by the American Mili-

---

**3.** Although President Wilson submitted the Treaty of Versailles to Congress for approval, S. Doc. 49, 66th Cong., 1st Sess. (1919), it was not ratified and consequently when the Treaty became effective on January 10, 1920, the United States was not a party thereto. It was not until August 25, 1921, that the United States finally established friendly relations with Germany. 42 Stat. 1939 (1921).

**4.** "Agreement on Central Machinery in Germany", 5 U.S.T. 2062 (1945).

**5.** Other grounds relied upon were lack of personal jurisdiction and *forum non conveniens.* Disposition on these grounds was deferred without prejudice. Defendants also state that, should they be required to answer the complaint, they will interpose affirmative defenses of payment, release, settlement, accord and satisfaction, statute of limitations and laches.

**6.** *Bernstein v. Van Heyghen Freres Societe Anonyme*, 163 F.2d 246 (2d Cir.), *cert. denied*, 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357 (1947); *Bernstein v. N. V. Nederlandsche-Amerikaansche, etc.*, 210 F.2d 375 (2d Cir. 1954); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); *First National City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972).

**7.** Judge Hand said that ". . . a court of the forum will not undertake to pass upon the validity under the municipal law of another state of the acts of officials of that state, purporting to act as such." 163 F.2d at 249. At the time of the second *Bernstein* decision, *supra*, 210 F.2d at 375, the Court was in receipt of a letter from the United States State Department relieving it from any restraint upon the exercise of its jurisdiction to pass upon the validity of the acts of Nazi officials. This has become known as the "*Bernstein* exception" to the Act of State doctrine.

tary Government in Germany, might furnish an additional basis for jurisdiction in the District Court. On the argument of the motion, defendants' counsel stipulated that in the interest of having a prompt disposition of his appeal, defendants would not object if this Court also considered plaintiff's supplemental contentions concerning Military Law 59.

### The Question of Jurisdiction

■ The District Court held that it had subject matter jurisdiction to consider plaintiff's treaty-based claims, because plaintiff's right to recover "will be sustained if the treaties of the United States are given one construction and will be defeated if they are given another." This analysis was proper. Section 1331 provides that the District Courts shall have jurisdiction in cases involving more than ten thousand dollars which arise "under the Constitution, laws or treaties of the United States." Section 1350 provides for such jurisdiction in any civil action by an alien for a tort "in violation of the law of nations or a treaty of the United States." While these provisions do not create a cause of action for a plaintiff seeking recovery under a treaty, they do give the District Court power to determine whether, in a well pleaded complaint, a cause of action exists. *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912, 917 (1951); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 359, 79 S.Ct. 468, 473, 3 L.Ed.2d 368, 374 (1959); *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939, 943 (1946). *Cf. Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 776, 39 L.Ed.2d 73, 78 (1974).

■ Where, however, a plaintiff's allegation of jurisdiction is so attenuated and insubstantial as to be absolutely devoid of merit, a District Court may refuse jurisdiction. *Bell v. Hood, supra*, 327 U.S. at 682–83, 66 S.Ct. at 776, 90 L.Ed. at 943–44. Plaintiff's claim under Military Law 59, as distinguished from his treaty claims, falls within this category. This "law" was promulgated by the American Military Government of occupied Germany on November 10, 1947, at a time when the United States was still officially at war with that country.[8] Its stated purpose was:

> [T]o effect to the largest extent possible the speedy restitution of identifiable property . . . to persons who were wrongfully deprived of such property within the period from 30 January 1933 to 8 May 1945 for reasons of race, religion, nationality, ideology, or political opposition to National Socialism. Military Law 59, Art. 1(1).

A claimant under this act would file a petition with a Central Filing Agency which would forward it to an appropriate Restitution Agency for attempted adjustment. *Id.*, Arts. 55, 62. If the matter could not be compromised, it was then referred to the Restitution Chamber, a three-judge court which held hearings and rendered written opinions. *Id.*, Arts. 64, 66, 68. Appeals from the Chamber originally went to a Board of Review, Art. 69, but in 1950 this was replaced by the Court of Restitution Appeals. 15 Fed.Reg. 1547 (1950). Decisions of the Court of Restitution Appeals were final and not subject to further review. 15 Fed.Reg. 1548 (1950).

■ Traditionally, the "laws" of the United States within the meaning of § 1331 are statutory in origin. *The Fair v. Kohler Die and Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716, 717 (1913); *Montana-Dakota Utilities Co. v. Northwestern Public Service Co., supra*, 341 U.S. at 249, 71 S.Ct. at 694, 95 L.Ed. at 917, although the Supreme Court has in recent years broadened the definition of this term to include claims founded upon federal common law. *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972). United States Military Commissions and Occupation Courts generally have no statutory existence. *Madsen v. Kinsella*,

---

8. The war between the United States and Germany was not officially terminated until October 19, 1951. Joint Res. Oct. 19, 1951, c. 519, 65 Stat. 451.

343 U.S. 341, 347, 72 S.Ct. 699, 703, 96 L.Ed. 988, 995 (1952); *In re Yamashita*, 327 U.S. 1, 19 n. 7, 66 S.Ct. 340, 349, 90 L.Ed. 499, 511 (1946). The President has extensive power to set up special tribunals in occupied foreign lands, and they are considered arms of the Executive. *Rose v. McNamara*, 126 U.S.App.D.C. 179, 375 F.2d 924, 927 (1967). As stated in 1 Moore's Federal Practice ¶ 0.5[3.–1], at 141, "military commissions with their flexible jurisdiction are largely unfettered instruments of the executive branch of government and the President as Commander in Chief." In times of war, executive decisions are generally political and military in nature, and neither judicially manageable nor reviewable. *United States v. Shaughnessy*, 177 F.2d 436 (2d Cir. 1949), *cert. denied*, 338 U.S. 948, 70 S.Ct. 486, 94 L.Ed. 585 (1950); *DaCosta v. Laird*, 448 F.2d 1368, 1370 (2d Cir. 1971) (per curiam), *cert. denied*, 405 U.S. 979, 92 S.Ct. 1193, 31 L.Ed.2d 255 (1972); *Atlee v. Laird*, 347 F.Supp. 689 (E.D.Pa.1972), *aff'd by order*, 411 U.S. 911, 93 S.Ct. 1545, 36 L.Ed.2d 304 (1973). The fact that this executive authority is exercised by the President through others does not transmute it into judicially reviewable action. *Ludecke v. Watkins*, 335 U.S. 160, 165, 68 S.Ct. 1429, 1431, 92 L.Ed. 1881, 1886 (1948).

■ Even in peace time, Executive Orders issued without statutory authority providing for presidential implementation are generally held not to be "laws" of the United States. *Stevens v. Carey*, 483 F.2d 188 (7th Cir. 1973); *National Ass'n of Internal Revenue Employees v. Dillon,*123 U.S.App. D.C. 58, 356 F.2d 811 (1966); *Manhattan-Bronx Postal Union v. Gronouski*, 121 U.S. App.D.C. 321, 350 F.2d 451 (D.C. Cir. 1965), *cert. denied*, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966); *McDaniel v. Brown & Root, Inc.*, 172 F.2d 466 (10th Cir. 1949); *Crabb v. Welden Bros.*, 164 F.2d 797 (8th Cir. 1947); *Sweet v. B. F. Goodrich Co.*, 68 F.Supp. 782 (N.D.Ohio 1946), *appeal dismissed on other grounds*, 174 F.2d 1022 (6th Cir. 1949) (per curiam); *Lodge 1647 and Lodge 1904 American Fed. of Gov't Employees v. McNamara*, 291 F.Supp. 286 (M.D.Pa.1968); *Canal Zone Central Trade Labor Union v. Fleming*, 246 F.Supp. 998 (D.C. Canal Zone 1965), *rev'd on other grounds*, 383 F.2d 110 (5th Cir. 1967).

■ Military Law 59 created its own regulations and its own tribunals to interpret and enforce them. It was completely self-contained. Nowhere did it provide for proceedings in a U.S. District Court, which has only such jurisdiction as is conferred upon it by statute. *Goldlawr, Inc. v. Heiman*, 288 F.2d 579, 582 (2d Cir. 1961), *rev'd on other grounds*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Its provisions had no general applicability but were peculiarly concerned with the problems of occupied Germany and its people. *Cf. Puerto Rico v. Rubert Hermanos Co.*, 309 U.S. 543, 550, 60 S.Ct. 699, 703, 84 L.Ed. 916, 919 (1940). It did not create a cause of action in favor of the plaintiff which can be .enforced in a U.S. District Court. *See American Well Works Co. v. Layne and Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987, 989 (1916). Neither is there any basic controversy concerning its provisions. *See Gully v. First Nat'l Bank*, 299 U.S. 109, 118, 57 S.Ct. 96, 100, 81 L.Ed. 70, 75 (1936).

### Plaintiff's Treaty Rights

■ A United States treaty is a contract with another nation which under art. VI, cl. 2 of the Constitution becomes a law of the United States. *United States v. Reid*, 73 F.2d 153, 155 (9th Cir. 1934), *cert. denied*, 299 U.S. 544, 57 S.Ct. 44, 81 L.Ed. 400 (1936). It may also contain provisions which confer rights upon the citizens of one of the contracting parties which are capable of enforcement as are any other private rights under the law. *Z. & F. Assets Realization Corp. v. Hull*, 72 App.D.C. 234, 114 F.2d 464, 470 (1940), *aff'd*, 311 U.S. 470, 61 S.Ct. 351, 85 L.Ed. 288 (1941). In general, however, this is not so. Brownlie, *The Place of the Individual in International Law*, 50 Va.L.Rev. 435, 440 (1964). Rarely is the relationship between a private claim and a general treaty sufficiently direct so that it may be said to "arise under" the treaty as required by art. III, § 2, cl. 1 of

the Constitution. 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3563, at 424 (1975).

■ It is only when a treaty is self-executing, when it prescribes rules by which private rights may be determined, that it may be relied upon for the enforcement of such rights. *Foster v. Neilson,* 2 Pet. 253, 27 U.S. 253, 7 L.Ed. 415 (1829); *Edye v. Robertson* (Head Money cases), 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884); *Z. & F. Assets Realization Corp. v. Hull, supra,* 114 F.2d at 471; *Camacho v. Rogers,* 199 F.Supp. 155, 158 (S.D.N.Y.1961); *Pauling v. McElroy,* 164 F.Supp. 390 (D.D.C.1958), *aff'd,* 107 U.S.App.D.C. 372, 278 F.2d 252 (1960), *cert. denied,* 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960); *Saipan v. United States Dep't of Interior,* 356 F.Supp. 645, 660 (D.Hawaii 1973). *Cf. Hidalgo County Water Control and Improvement Dist. v. Hedrick,* 226 F.2d 1, 7 (5th Cir. 1955), *cert. denied,* 350 U.S. 983, 76 S.Ct. 469, 100 L.Ed. 851 (1956). Indeed, even where a treaty is self-executing, Federal jurisdiction under § 1331 will not lie where it is not provided for in the treaty. *Smith v. Canadian Pacific Airways, Ltd.,* 452 F.2d 798, 802 (2d Cir. 1971).

■ We see no necessity for reviewing in detail the several treaties relied upon by plaintiff. Plaintiff was permitted to file an amended complaint specifying the particular treaty provisions upon which he based his claim. We find no error in the District Court's findings that none of these dealt with the expropriation by Germans of the property of German citizens, and none conferred any private rights with regard to such property which were enforceable in American courts. The Hague Convention attempted to impose standards of conduct for belligerent nations. The Kellogg-Briand Pact was a declaration renouncing war as an instrument of national policy. The Treaty of Versailles was a reparations and war crimes compact following World War I. The Four Power Occupation Agreement provided for the joint occupation and control of Germany by the conquering nations during the period of surrender.

Treaty provisions similar to those involved herein have been relied upon by other plaintiffs with a singular lack of success. In *Hamilton v. Regents of University of California,* 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343 (1934), plaintiffs challenged a California law which required university students to take a course in military science and tactics relying in part upon the provisions of the Kellogg-Briand Pact. The Court stated that this contention required "little consideration" and found no conflict between the statute and the provisions of the treaty. *Id.* at 265, 55 S.Ct. at 205, 79 L.Ed. at 354. In *Pauling v. McElroy, supra,* the court held that the provisions of the Charter of the United Nations and the Trusteeship Agreement for the Trust Territory of the Pacific Islands were not self-executing and did not vest plaintiffs with individual legal rights. *Camacho v. Rogers, supra,* and *United States v. Vargas,* 370 F.Supp. 908, 915 (D.Puerto Rico 1974), dealt with the United Nations Charter in the same manner.

We conclude that the District Court was correct in holding that no private right of action could be based on the four treaties referred to in plaintiff's complaint.

### The Law of Nations

■ As pointed out above, 28 U.S.C. § 1350 provides in part that District Courts shall have jurisdiction of an action by an alien for a civil tort committed in violation of the law of nations. Plaintiff argues that the seizure of his property and defendants' allegedly wrongful repudiation of the 1948 settlement agreement were torts which violated the law of nations. We disagree.

■ There has been little judicial interpretation of what constitutes the law of nations and no universally accepted definition of this phrase. *Khedivial Line, S.A.E. v. Seafarers' International Union,* 278 F.2d 49, 52 (2d Cir. 1960) (per curiam); *Valanga v. Metropolitan Life Ins. Co.,* 259 F.Supp. 324, 327 (E.D.Pa.1963). There is a general consensus, however, that it deals primarily with the relationship among nations rather

than among individuals. "It is termed the Law of Nations—or International Law—because it is relative to States or Political Societies and not necessarily to individuals, although citizens or subjects of the earth are greatly affected by it." von Redlich, *The Law of Nations* 5 (2d ed. 1937).[9] In *Khedivial, supra*, 278 F.2d at 52, we said: "Plaintiff has presented no precedents or arguments to show either that the law of nations accords an unrestricted right of access to harbors by vessels of all nations or that, if it does, this is a right of the foreign national rather than solely of the nation."

 Like a general treaty, the law of nations has been held not to be self-executing so as to vest a plaintiff with individual legal rights. *Pauling v. McElroy, supra*, 164 F.Supp. at 393. It has been held inapplicable to torts such as unseaworthiness of a vessel and failure to provide a seaman with a safe place to work, *Damaskinos v. Societa Navigacion Interamericana, S.A., Panama*, 255 F.Supp. 919, 923 (S.D.N.Y. 1966), and to the right of a Russian citizen to recover the proceeds of a life insurance policy. *Valanga v. Metropolitan Life Ins. Co., supra.*

More importantly for purposes of this lawsuit, violations of international law do not occur when the aggrieved parties are nationals of the acting state. This was pointed out by Mr. Justice White in his dissenting opinion in *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 441–442, 84 S.Ct. 923, 947, 11 L.Ed.2d 804, 831 (1964), and it is the clear holding in *Salimoff & Co. v. Standard Oil Co.*, 262 N.Y. 220, 186 N.E. 679 (1933), cited by both the majority and dissenting opinions.[10]

In the instant case, plaintiff was a citizen and resident of Germany at the time of defendants' alleged wrongdoing. Moreover, his complaint did not allege that defendants played any role in the policymak-

ing decision of the German government. Defendants' conduct, tortious though it may have been, was not a violation of the law of nations, which governs civilized states in their dealings with each other.

Inasmuch as the District Court was correct in holding that plaintiff's complaint failed to state a cognizable claim upon which relief could be granted, we need not consider the parties' contentions concerning the "Act of State" doctrine which was not relied upon by the District Court.

The judgment appealed from is affirmed.

OAKES, Circuit Judge (concurring):

I concur in the result.

---

9. Kent defined the law of nations as "that code of public instruction which defines the rights and prescribes the duties of nations in their intercourse with each other." 1 Kent Commentaries 1 (1st ed. 1826). *See also* Brierly, *The Law of Nations* 1 (6th ed. 1963).

10. In *Salimoff*, the New York Court of Appeals said: "According to the law of nations [Soviet Russia] did no legal wrong when it confiscated the oil of its own nationals and sold it in Russia to the defendants." 262 N.Y. at 227, 186 N.E. at 682.