HYOSUNG (AMERICA), INC., Plaintiff,

v.

JAPAN AIR LINES CO., LTD. and
Flying Tigers, Defendants.

No. 85 Civ. 2095 (RWS).

United States District Court,
S.D. New York.

Oct. 23, 1985.

Bingham Englar Jones & Houston (Chris Christofides, New York City, of counsel), for plaintiff.

Condon & Forsyth (Katherine B. Posner, Diane W. Wilson, New York City, of counsel), for defendant Japan Air Lines Co., Ltd.

Donovan, Maloof, Walsh & Kennedy (Joseph A. Scalzo, Paul H. Murphy, New York City, of counsel), for defendant Flying Tigers.

## OPINION

SWEET, District Judge.

Defendant Flying Tigers ("Tiger") has moved pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure to dismiss this case brought by plaintiff Hyosung (America), Inc. ("Hyosung") for lack of subject matter jurisdiction. Joining Hyosung in opposing the motion is Tiger's co-defendant Japan Air Lines Co., Ltd. ("JAL"). For the reasons set forth below, the motion is denied.

The allegations in Hyosung's complaint are, of course, accepted for purposes of this motion. Hyosung, a foreign corporation, is the owner of certain cargo transported from Pusan, Republic of Korea to Boston, Massachusetts under JAL's air waybill No. 131 PUS 3139 8765. The shipment was handled at Boston's Logan International Airport by Tiger. In its complaint, Hyosung alleges negligence and wilful misconduct in the defendants' handling of the shipment and seeks damages of $38,505.26 plus interest.

Hyosung asserts jurisdiction under 28 U.S.C. § 1331, claiming that the air carriage contract is governed by, and therefore its action arises under, the Convention for the Unification of Certain Rules Relat-

ing to International Transportation by Air (the "Warsaw Convention" or "Convention"), 49 U.S.C. § 1502 note. The question raised by Tiger's motion is whether the governments of the United States and the Republic of Korea are in treaty relations with respect to international aviation.

There is no dispute between the parties as to the actions taken by the United States and Korea regarding international agreements to regulate aviation. On July 31, 1934, the United States adhered to the Convention, a multilateral treaty now joined by more than 120 nations. The Republic of Korea adhered to the Hague Protocol amending the Warsaw Convention on July 13, 1967, but did not ratify separately the Convention. The Hague Protocol (Protocol to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air, 478 U.N.T.S. 371 (1955)) was the result of a multinational attempt to revise certain portions of the Warsaw Convention, including, most importantly to the United States, the liability limit which restricts recovery for the loss of human life. The Hague Protocol doubled the liability limit for each passenger to $16,600. Despite its participation in the negotiation and signing of the Hague Protocol, the United States never presented the new amendments to the Senate for ratification and therefore is not a party to the Hague Protocol. *See In re Korean Airlines Disaster of September 1, 1983,* MDL No. 565, slip op. at 2–8 (D.D.C. July 25, 1985) (recounting history of the Warsaw Convention).

To resolve the jurisdictional issue presented, it is necessary to determine whether or not Korea's adherence to the Hague Protocol without signing the Convention places that country in treaty relations with the United States, a country that signed only the original version of the Warsaw Convention. To support jurisdiction, Hyosung and JAL have relied upon scholarly commentary and international legal source material. These materials suggest that since the Hague Protocol is nothing more than a list of amendments to the Warsaw Convention, a country which ad-

heres to the Hague Protocol has also accepted such a significant portion of the unamended version of the Convention as to establish a treaty relationship with the parties to the Convention itself. The Hague Protocol supports this interpretation by Article XXIII(2) which states that "[a]dherence to this Protocol by any State which is not a Party to the Convention shall have the effect of adherence to the Convention as amended by this Protocol." This language indicates that the Hague Protocol was not intended to supplant the Convention and that adherence to the Hague Protocol includes adherence to the Convention.

The language in Article XXIII(2) of the Protocol establishes that the Republic of Korea and the United States are not in treaty relations with respect to the amended portions of the Convention, but this does not compel the conclusion that the United States and Korea are not each parties to the unamended portions of the Convention. One international legal source on the interpretation of the treaties suggests that the actions taken by the United States and Korea do establish treaty relations with respect to the unamended sections of the Convention. Article 40 of the Vienna Convention on the Law of Treaties, *opened for signature* May 23, 1969, —— U.N.T.S. ——, *reprinted in* 63 Am.J.Intl.L. 875 (1969), addresses the amendment of multilateral treaties and provides that:

> 5. Any state which becomes a party to the treaty after the entry into force of the amending agreement shall, failing an expression of a different intention by that state:
>
> (a) be considered as a party to the treaty as amended; and
>
> (b) be considered as a party to the unamended treaty in relation to any party to the treaty not bound by the amending agreement.

One of the reasons cited for such expansive treatment of multilateral agreements is that such an interpretation ensures the "widest possible participation" in a multilateral treaty, T. Elias, *The Modern Law of*

*Treaties,* 94 (1974), a goal consistent with the Convention which sought to provide the uniform regulation of air coverage throughout the world. *See Korean Air Lines Disaster, supra,* at 15–16. *See also* R. Mankiewicz, *The Liability Regime of the International Air Carrier* 2 (1981).

However, Tiger has cited several authorities which assert that because the Republic of Korea has adhered only to the Warsaw Convention *as amended* by the Hague Protocol that it is not in treaty relations with the United States. Civil Aeronautics Board, *Aeronautical Statutes and Related Material* 512 n. 2 (1974) (editor's note); Kreindler, "Arbitration Law," N.Y.Law J., Feb. 6, 1984, at 1. A similar conclusion is provided by a May 7, 1985 letter written by an Attorney Advisor on Treaty Affairs for the U.S. State Department which refers to the department's annual publication entitled *Treaties in Force* as a reliable source for "providing information on treaties and other international agreements to which the United States has become a party ..." and indicates that the Republic of Korea has not adhered to the Convention in its unamended form. These bare conclusions, however, do not provide any analytical basis for countering the rationale expressed in Article 40 of the Vienna Convention cited above.

■ Because there is no indication that the Executive has considered the line of reasoning articulated by Article 40 of the Vienna Convention in the context of the Convention and the Hague Protocol, it is less appropriate to regard its interpretation with the great weight generally accorded its construction of international treaties. *See Charlton v. Kelly,* 229 U.S. 447, 468, 33 S.Ct. 945, 952, 57 L.Ed. 1274 (1913). Of course, in conjunction with a bilateral treaty, the requirement is obvious that the United States and another country must formally ratify the same document in order to establish treaty relations sufficient to support federal jurisdiction. However, the particularities of multilateral treaty negotiation and ratification permit two nations to agree substantially on a treaty which has been amended in the interim between each country's ratification. It should be noted, of course, that the Hague Protocol amended only certain limited provisions of the Convention and those provisions do not affect the question of jurisdiction at issue here.

■ Tiger seeks to rebut the substantial agreement theory of Hyosung and JAL by another article of the Vienna Convention. Article 17(1) provides that: "the consent of a state of be bound by part of a treaty is effective only if the treaty so permits or the other contracting states so agree." Here, however, the issue is not whether it is proper to allow one state to adhere to a portion of a treaty but whether both states' adherence to portions of a treaty may be deemed to constitute an agreement between those two nations. Despite its suggestion of the inequity arising from permitting joint adherence to a portion of a treaty, Tiger has not pointed to any portions of the Convention relevant to Hyosung's claim in this action on which the United States and Korea are not in agreement. Since each country has adhered to unamended portions, the Convention does provide the substantive law governing air carriage disputes concerning carriers from the Republic of Korea and the United States which are within the scope of these sections. To require Korea to execute the Convention in addition to the Protocol adopting the Convention would be to exalt the formality of treaty signatories over the substance of the two nations' agreement regarding this air carriage contract. Absent a finding that these unamended portions are inseverable from the rest of the treaty because of prejudice to either nation, the unamended sections will be considered a treaty agreement between the United States and Korea.

This conclusion is consistent with the use of the term "treaty" in 28 U.S.C. § 1331. While in the United States the word "treaty" technically refers to those international agreements ratified by two-thirds of the Senate, the word is frequently used internationally to refer to any agreement be-

tween nations no matter how the agreement has been formalized. *See Weinberger v. Rossi*, 456 U.S. 25, 29–30, 102 S.Ct. 1510, 1514, 71 L.Ed.2d 715 (1982). The Supreme Court has, with regard to several statutory provisions, found that Congress intended the word treaty to be used consistent with its broader connotations, rather than tied strictly to its constitutional definition. *See id; B. Altman & Co. v. United States*, 224 U.S. 583, 601, 32 S.Ct. 593, 597, 56 L.Ed. 894 (1912). One reason for such a liberal construction in jurisdictional statutes is the belief that Congress expected that all multinational agreements to which the United States is a party could have a significant bearing on this country's international relations and thus should be heard in federal court. *Id.* at 601, 32 S.Ct. at 597.

■ Since the United States' adherence to the unamended portions of the Convention was ratified by the Senate, such a holding does not extend the court's jurisdiction beyond the control of Congress to those international agreements which are signed solely by the executive department. The articles of the Convention which give rise to a cause of action for damages have not been amended by the Hague Protocol and thus are included in the agreement between the United States and Korea, thereby satisfying the requirement of § 1331 that a treaty must provide private right of action before jurisdiction attaches. *See Dreyfus v. Von Finck*, 534 F.2d 24, 29–30 (2d Cir.1976); *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 808–10 (D.C. Cir.1984) (J. Bork, concurring), *cert. denied,* — U.S. —, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985).

The only other court which has confronted this jurisdictional issue has found that the Hague Protocol and the Convention cannot be considered to be two independent treaties, since the Hague Protocol cannot stand independently from the basic framework of the Convention. *See Korean Air Lines Disaster, supra*, at 14–15. The reasoning of the Honorable Aubrey E. Robinson, Jr. and his conclusion that federal jurisdiction properly attaches are also adopted by this opinion.

For the foregoing reasons, Tiger's motion is denied. The discovery deadline in this action is hereby extended to December 4, 1985 with the pretrial order and trial memoranda due on December 11, 1985.

IT IS SO ORDERED.