UNITED STATES of America,
Plaintiff-Appellee,

v.

Oscar BENT–SANTANA,
Defendant-Appellant.

No. 84–5445.

United States Court of Appeals,
Eleventh Circuit.

Nov. 4, 1985.

Keith M. Krasnove, Margate, Fla., for Oscar Bent-Santana.

Stanley Marcus, U.S. Atty., Isaac J. Mitrani, Linda Collins Hertz, Nancy Worthington, Asst. U.S. Attys., Miami, Fla., for U.S.

Before JOHNSON and HENDERSON, Circuit Judges, and ALLGOOD *, District Judge.

JOHNSON, Circuit Judge:

We are here asked to determine what constitutes a "treaty or other arrangement" between the United States and other governments, for purposes of 19 U.S.C.A. § 1401(j) (1985), sufficient to support a conviction under 21 U.S.C.A. § 955a(c) (1985). We hold that assent to board and search a foreign flag vessel by a duly authorized official of that foreign government, communicated verbally or in writing to appropriate United States Department of State personnel, is adequate to meet the terms of Section 1401(j). From that holding, it follows that the judgment of the United States District Court for the Southern District of Florida must be AFFIRMED.

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

## I. FACTS.

At 10:30 p.m. on January 24, 1984, a United States Coast Guard spotter plane observed the ship ADVENTURA, a Panamanian flag vessel, engaged in off-loading 10 miles from the coast of Great Abaco Island, Bahamas. The Coast Guard observed bales of marijuana being moved from the ADVENTURA to several smaller boats. When one of the smaller boats headed toward the Florida coast, it was kept in constant surveillance by the spotter plane and was intercepted by the Coast Guard cutter SEAHAWK 35 miles east of Florida. The SEAHAWK crew observed the hands on the small boat dumping bales of marijuana into the water. Upon boarding the boat, an American flag vessel, the Coast Guard found 14 to 17 bales of marijuana, arrested the crew and seized the boat.

The cutter then intercepted the ADVENTURA, which was headed in an easterly direction and in international waters approximately 100 miles from the United States coast, at 8:00 a.m. on January 25. The commander of the cutter, Lieutenant Bernard, radioed the captain of the ADVENTURA, the appellant Oscar Bent-Santana, and received permission to board. Bernard also radioed United States Coast Guard Command requesting that it contact the Panamanian government for permission to seize the vessel if investigation found some violation of United States law.

There is no dispute that Bent-Santana gave permission to board and inspect documents showing that the ADVENTURA was cleared by the Colombian government to travel between Baranquilla, Colombia, and Freeport, Bahamas. There is dispute as to whether the appellant also gave permission for Bernard to search the vessel, the appellant saying he authorized Bernard only to board to inspect papers, Bernard claiming the appellant twice gave him permission to "look at whatever you like." During his look around Bernard determined that a portion of the fuel tank was hollow, detected the strong odor of marijuana coming from the ventilation system, and found a marijuana stem on the deck. He thereupon ordered his crew to begin digging with pickaxes an area of "freshly painted cement" deck near the crew members' bunks; he there found a hidden hatch leading to the hollowed out portion of the fuel tank. This niche contained marijuana residue. Bernard apparently did not ask permission to dig up the deck. Upon further investigation the other fuel tank was discovered to contain several tons of marijuana.

At this point, around 9:00 a.m., the crew of the ADVENTURA were read their rights by Bernard. At 1:00 p.m. the Government of Panama communicated to United States officials its assent to the search and seizure of the boat. Bernard was notified of the consent at 5:00 p.m., at which point formal arrests were made. When the boat was one mile off the Florida coast the crew were handcuffed.

The appellant was indicted on two counts by a Grand Jury in the Southern District of Florida on February 7, 1984. The first count was conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C.A. § 955a(c). The second count was for possession with intent to distribute marijuana in violation of Section 955a(c) and 18 U.S.C.A. § 2. Upon appellant's motion, the magistrate dismissed the second count, though not the first, for lack of jurisdiction. The government appealed the dismissal to the district judge, claiming that the appellant did not give them notice.

At an evidentiary hearing on the motion to dismiss and on a separate motion made by appellant to suppress the evidence seized, the district court, Aronovitz, J., admitted over appellant's objection certain documents (denominated Exhibits 4, 5, and 6) regarding Panamanian consent to search and seize the ADVENTURA. These were issued by the Panamanian Office of Consular and Maritime Affairs, dated January 31, 1984, and indicated that Panama consented to the search and seizure of January 25. Judge Aronovitz also ruled that Bent-Santana could move to strike the documents at the close of the trial. During the course of the proceedings, the appellant did not make a motion to strike. He did, however, intro-

duce one of the contested documents into evidence. At the close of the hearing, Judge Aronovitz reversed the magistrate's dismissal of the second count and denied appellant's motions to dismiss and to suppress.

Bent-Santana changed his plea to guilty on April 23, 1984. Shortly thereafter he moved to vacate the plea and dismiss the indictment upon receiving from the government, through an envelope mailed May 8, 1984, a letter from the Panamanian Consul in New York to the Coast Guard. The letter was issued on April 19 (four days before the district court ruled on the motions) but dated for mailing on April 24, (one day after the hearing) setting forth the intergovernmental understanding[1] on United States boarding of Panamanian flag vessels.

Bent-Santana premised his motion to vacate his plea on grounds of prosecutorial misconduct for failure to turn this letter over under a *Brady* order that included a request for information on arrangements in effect between the United States and Panama. Officials at the United States State Department and the American Embassy in Panama had previously said that no formal arrangements existed and that cases were handled *ad hoc*. The appellant's counsel had not attempted to contact the Panamanian consulate. The motion was denied by the district court and on May 23, 1984, Bent-Santana entered a conditional plea agreement as to Count II preserving his

right to appeal the motions he tendered below. He was sentenced by Judge Aronovitz to five years' imprisonment at Eglin Air Force Base, followed by a special parole term of ten years. Count I was dismissed on oral motion of the government.

## II. JURISDICTION UNDER 21 U.S.C.A. § 955a(a).

The appellant contends first that an American court is not properly seized of jurisdiction over a flag vessel of another nation in international waters under Section 955a(a). The jurisdictional reach under Section 955a is strictly a question of law. Hence it is subject to plenary review. *Cathbake Inv. Co. v. Fisk Elect. Co.*, 700 F.2d 654, 656 (11th Cir.1983).

The statute, in subsection (a), extends jurisdiction to persons "on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States on the high seas [if such persons] knowingly or intentionally manufacture or distribute, or ... possess with intent to manufacture or distribute a controlled substance." Subsection (b) extends this proscription to all United States citizens on board any vessel. Subsection (c) covers persons on board "any vessel within the customs waters of the United States...." "Customs waters" is defined by 19 U.S.C.A. § 1401(j) and includes any "foreign vessel subject to a treaty or other arrangement between a foreign government and

---

1. The letter states that the procedures set forth are the product of a "meeting ... between representatives of the Governments of the United States and the Republic of Panama" in December of 1982, but that the points enumerated "are not a formal agreement between the two Governments." Rather, "they are agreed upon guidelines to be followed, in practice, whenever a Panamanian Flag vessel is attempting to smuggle drugs into the United States." Relevant to this appeal is Point 1: "prior to the boarding of any Panamanian Flag vessel, the U.S. Coast Guard must *request* authorization from the Panama National Guard or from the Directorate of Consular and Maritime Affairs, N.Y. Office." (emphasis added) The agreement apparently does not require that authorization be granted. Appellant contests the consent granted by Panama on grounds that it was given by the Director General of the Office of Consular and

Maritime Affairs in *Panama,* not in New York as the terms of the agreement require. A Panamanian decision to substitute the one for the other is beyond our competence to review. *Dreyfus v. Von Finck,* 534 F.2d 24, 29–30 (2d Cir.), *cert. denied,* 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976).

Also relevant is Point 2: "It shall be arranged that in any boarding of a Panamanian Flag Vessel, a Panamanian Consular Official is to be present." We note that the usual practice seems to be that Panamanian consent to board and search gives American Coast Guard personnel authority to act "as agent[s] for the Government of Panama." *U.S. v. Streifel,* 665 F.2d 414, 418 (2d Cir.1981). To the extent this constitutes a waiver of the terms of the understanding by Panama, it too is beyond our competence to consider.

the United States enabling or permitting the authorities of the United States to board, examine, search, seize, or otherwise to enforce upon such vessel upon the high seas the laws of the United States...."

Bent-Santana argues that this case should be reviewed under subsection (a) rather than subsection (c), claiming that he was charged under the former, rather than the latter. From this he argues that under the terms of subsection (a) an American court would not have jurisdiction over the appellant because the statute by its terms and well-settled principles of international law does not permit jurisdiction by one nation over the flag vessels of other nations on the high seas absent consent. Whatever the merits of this contention, it is clear from the record that Bent-Santana was tried and convicted of violating Section 955a(c). Accordingly, this argument is completely misplaced.

## III. JURISDICTION UNDER SECTION 955a(c).

■ Appellant contends that the search and seizure of the ADVENTURA was improper because it was not within the customs waters of the United States. He premises this on the claim that the consent given by the Panamanian government does not come within that contemplated by the "other arrangement" language of Section 1401(j). This too presents a question of law subject to plenary review. *Cathbake,* 700 F.2d at 656.

This Circuit has not yet definitively construed the language of Section 1401(j) as to the meaning of "treaty or other arrangement." The only discussion of customs waters in our jurisprudence appears to be *United States v. Romero-Galue,* 757 F.2d 1147 (11th Cir.1985). There this Court reversed and remanded on the "mixed question of law and fact" whether Panamanian approval conveyed through the United States State Department was sufficient to support seizure of a Panamanian ship used to smuggle marijuana. The Court reserved judgment as to whether this relayed consent was consistent with the terms of Section 1401(j). 757 F.2d at 1154.

At least four other circuits have considered this question, or one analogous to it, and all have held that verbal or written consent conveyed by the country of the vessel's flag constitutes an agreement sufficient to place the vessel in the customs waters of the United States. In *U.S. v. Loalza-Vasquez,* 735 F.2d 153, 157–58 (5th Cir.1984), the court held that a series of teletype messages, from the American Embassy in Panama to a Coast Guard cutter, of Panamanian assent to American boarding and searching of a Panamanian shrimper 250 miles off the United States coast (that was found to be carrying 36,000 pounds of marijuana) was sufficient to bring the seizure under the terms of Section 955a(c).

In *United States v. Streifel,* 665 F.2d 414 (2d Cir.1981), the Second Circuit considered the case of a Panamanian ship intercepted off the United States coast in international waters. The boat was boarded with the verbal permission of the Panamanian government, and marijuana was discovered in the hold. The court of appeals affirmed the defendant's conviction, *inter alia,* under Section 955(a). 665 F.2d at 417–19. While this is *dictum,* since the defendants did not appeal on the question of the validity of the search, the court did state that *ad hoc* assent would be sufficient to sustain a conviction and hence would constitute an "other agreement" for purposes of the statute.

In *United States v. Green,* 671 F.2d 46, 51 (1st Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2962, 73 L.Ed.2d 1352 (1982), the court held that a similar communication, conveyed by the American Embassy in Britain, of consent to board and search a ship later found to be carrying marijuana was sufficient to constitute a "special arrangement" under the terms of Section 1581(h). That statute prohibits an American officer from boarding a foreign vessel on the high seas to enforce United States law in contravention of a treaty absent "special arrangement" with the foreign government involved. The Fourth Circuit reached a similar result under Section 1581(h) in *United States v. Dominguez,*

604 F.2d 304, 308 (4th Cir.1979), *cert. denied*, 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 644 (1980), involving a Bahamian boat 200 miles off the United States coast where the Bahamian government sent the American Embassy a written confirmation of permission to seize the ship.

In this case the Panamanian government gave its assent through means similar to that deemed adequate in the cases *supra*. Appellant objects that no Panamanian official was on board the ship, as agreed to in the understanding set forth in Exhibit 2, and that in any event assent can only come through Executive Agreement. This fails for two reasons. First, we find it clear from the past instances of American seizure of Panamanian vessels that agreements of the type at issue here are intended to appoint American Coast Guard officers as agents of the Panamanian government. To that extent, the understanding is respected. Moreover, even if this were not enough to meet the terms of the agreement, and assuming *arguendo* that there was some binding force to the points in Exhibit 2, it is a settled principle of both public international law and American constitutional law that unless a treaty or intergovernmental agreement is "self-executing"—that is, unless it expressly creates privately enforceable rights—an individual citizen does not have standing to protest when one nation does not follow the terms of such agreement. *Foster v. Neilson*, 2 Pet. (27 U.S.) 253, 313–14, 7 L.Ed. 415 (1829); *Dreyfus v. Von Finck*, 534 F.2d 24, at 29–30 (2nd Cir.1976). Only Panama could invoke Point 2 and it evinces no such inclination. Bent-Santana lacks standing to complain under the terms of this understanding.

More importantly, it is clear from the language of Exhibit 2, and from the statements of American diplomatic personnel contacted by appellant's counsel, that the points set forth in that document do not function as a formal, binding agreement. Nor is there any authority to suggest that only a formal intergovernmental agreement would be adequate to meet the terms of Section 955a(c). Past and consistent practice suggests that arrangements are made on an *ad hoc* basis by the two governments.

Accordingly, we follow the holdings of the other four circuits that have had occasion to consider this question and hold that the *ad hoc* grant of permission to search a foreign flag vessel, issued by the government of that flag to the appropriate officials of the United States State Department, is sufficient to place a foreign flag vessel within American customs waters under Section 1401(j) and hence subject to search for and seizure of contraband under American law.

Once we find that this agreement is consistent with the requirements of the statute, we must still determine whether the search was conducted in accordance with the usual constitutional requirements for searches and seizures. Bent-Santana attempts to distinguish his case from those *supra* by noting that in the other cases the Coast Guard waited until the approval had been relayed. Here the cutter was in hot pursuit of the ADVENTURA and boarded and searched five hours *before* the consent was given. The government notes that the appellant had committed all elements of the crime proscribed by the statute and that it did not officially seize the vessel or arrest the crew until the consent was granted.

While this is initially troublesome, we find that this distinction is not sufficient to remove Bent-Santana's case from the realm of lawful searches and seizures. We here find the presence of at least two of the traditional exceptions to the Fourth Amendment Exclusionary Rule that vitiate any taint in this search. First, it is well-settled that reasonable searches consented to by defendants are not within the ambit of the Fourth Amendment. *United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 992, 39 L.Ed.2d 242 (1974). Bent-Santana admits that he freely consented to Bernard's boarding of the vessel and, though the precise parameters he placed on that permission are disputed, once on board it is clear from the record that the smell of marijuana was quite strong and that marijuana residue was *visible on the deck*.

That is sufficient to bring this case within the plain view exception for searches otherwise subject to the Exclusionary Rule. *Coolidge v. New Hampshire*, 403 U.S. 443, 465–73, 91 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564 (1971) (plurality); *United States v. Slocum*, 708 F.2d 587, 604–06 (11th Cir.1983). In *Slocum* this Court set forth three conditions that must be satisfied in order to effect a valid seizure of an item in plain sight without a warrant. The agent "must lawfully be in a position to view the disputed evidence," must "inadvertently discover" it, and the "incriminating nature of the disputed evidence must be immediately apparent on its face." All three conditions are here met. Commander Bernard was on board the ADVENTURA with Bent-Santana's permission. The smell of marijuana was strong and noticeable on the deck of the boat and marijuana residue was lying in full view on the top deck of the ship. Such evidence is obviously incriminating.

Even if this were not enough to avoid the taint of unlawful search and seizure, the record reveals that the government of Panama was informed that the boarding and search of the boat was in progress when the request for permission was made. The fact that assent was subsequently granted by the Panamanian government may be taken as a waiver or subsequent ratification of the actions of the Coast Guard functioning as Panama's agent.

## IV. APPLICABILITY OF THE *BRADY* RULE.

The appellant argues that the government failed to disclose to him Exhibit 2, the letter from the Panamanian Consulate in New York that set forth the general understanding between the United States and Panama. He argues that this was in violation of the pretrial discovery order, constituting prosecutorial misconduct as a violation of the rule announced in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The standard of review requires that appellant show that the government suppressed or withheld evidence requested by an accused and that the evidence is material or would tend to exculpate him or reduce

the penalty. 373 U.S. at 87–88, 83 S.Ct. at 1196–1197. This Court has construed *Brady* as holding that an appellant must show: "(1) that the prosecution suppressed evidence (2) that was favorable to the appellants or exculpatory and (3) that the evidence was material." *United States v. Blasco*, 702 F.2d 1315, 1327 (11th Cir.), *cert. denied*, — U.S. —, —, 104 S.Ct. 275, 276, 78 L.Ed.2d 256 (1983). Material evidence is that which "might have affected the outcome of the case." 702 F.2d at 1327.

The gist of appellant's argument is that the government suppressed Exhibit 2, the letter of the Panamanian consular officer, and that this was exculpatory and material because that letter set forth the procedures that were to be followed to meet the terms of the "other arrangement" under Section 1401(j). Bent-Santana argues as to the first requirement that the policy noted in the letter had been in effect for two years and that the letter could not be had by the appellant because he was not party to the "privity of communication" between the two sovereign governments. He also argues that the letter was issued on April 19, four days before he pleaded guilty on April 23, and that the United States government somehow suppressed it. He claims that had he known that the Coast Guard had not acted in conformity with the agreement he would not have so pleaded.

There is no merit to this argument. There is no evidence to suggest that the policy noted in Exhibit 2 was unavailable or somehow spirited away by the government until after appellant had entered his guilty plea. Rather it appears that appellant simply did not ask the right people for the policy. Lack of diligence will not create a *Brady* violation. *United States v. Brown*, 628 F.2d 471, 473 (5th Cir.1980). Beyond that, it is clear from the language of Exhibit 2 itself and from customary practice that the procedures set forth in that letter were not binding and were not always followed.

As to the question of the date of issuance of the letter there is some peculiarity. The letter says at its valediction "Issued on this 19th day of April, 1984." But

it says in its heading "April 24, 1984." The government mailed a copy of the letter to Bent-Santana's counsel on May 8. There is no explanation offered in the record for the differing dates.

Even if the question over the dates of the letter is resolved in appellant's favor, the letter is not exculpatory as required by the second prong of *Blasco*. As the government argues, the letter at most affects the resolution of the jurisdictional question. It has nothing to say about the guilt or innocence of Bent-Santana on the underlying charges of conspiring to smuggle marijuana. If there was error here, it was not prejudicial. *United States v. Bagley,* — U.S. —, — – —, 105 S.Ct. 3375, 3379-83, 87 L.Ed.2d 481 (1985).

For the same reason it would not meet the materiality prong. The validity of the search that resulted in the appellant's arrest derives from the consent of the appellant to the search, coupled with the plain view exception. The agreement between Panama and the United States governs searches conducted without consent of the ship's captain.

## V. THE ADMISSIBILITY OF CERTAIN DOCUMENTS AT THE SUPPRESSION HEARING.

■ Appellant's final argument is that Judge Aronovitz was in error when he admitted several documents at the hearing to suppress evidence. Specifically, Bent-Santana challenges the admission of Government's Exhibits 4, 5, and 6, documents transmitted from the Government of Panama to the American Embassy authorizing the seizure on January 25, 1984. Appellant offered Defendant's Exhibits 3 and 4, which the court admitted over the government's objection, that were documents by the same official indicating that the authority to seize was not requested until January 31, 1984. Bent-Santana objected under Fed.R.Evid. 803(8) to Government's Exhibits 4, 5, and 6 on grounds of hearsay because the conflicting documents indicated a lack of trustworthiness, and under Rule 803(8)(C) on the grounds that the "search was done pursuant to the instant criminal matter."

The review of decisions to admit evidence requires that the appellant show that "substantial rights of the party were affected." *Liner v. J.B. Talley & Co.,* 618 F.2d 327, 329 (5th Cir.1980).

The government here argues in response that which is obvious: the Federal Rules of Evidence do not apply to suppression hearings. *United States v. Raddatz,* 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."); Fed.R.Evid. 104(a); J. Weinstein & M. Berger, 1 Weinstein's Evidence ¶ 104[12] (1982). Thus, the argument is meritless.

## VI. CONCLUSION.

For the reasons set forth above, we find no merit in appellant's contentions. The consent relayed from the Government of Panama to American officials was sufficient to bring this case under the terms of Section 1401(j) and thus under Section 955a(c). Further, we find that the Coast Guard in this case acted in accordance with the constitutional requisites for search and seizure under the Fourth Amendment. The judgment of the district court is AFFIRMED.