UNITED STATES of America, Plaintiff-Appellant,

v.

Francisco ROMERO–GALUE, Alberto Francisco Gomez-Sjogreen, Julio Pedro Martinez, Luis Alberto Abrahams-Webster, Jose Manuel Enciso, Hector Manuel Murillo-Montenegro, Cesar Almeida-Chaparro, Gregorio Torijano-Mendoza and Luis Fernando Arias-Valencia, Defendants-Appellees.

No. 84–5365.

United States Court of Appeals, Eleventh Circuit.

March 18, 1985.

---

89. *See supra* note 66.

Sonia Escobio O'Donnell, Linda Collins-Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Fernando Heria, Hialeah, Fla., for Almeida-Chaparro.

Maria Rivas Hamar, Miami, Fla., for Torijano-Mendoza.

Alberto J. Ordonez, Miami, Fla., for Encisco.

Isabel Bombino, Miami, Fla., for Romero-Galue.

John D. Lazarus, Miami, Fla., for Martinez.

Manuel Mari, Miami, Fla., for Gomez-Sjogreen.

Leon Tozo, Miami, Fla., for Abrahams-Webster.

Humberto Aguilar, Miami, Fla., for Arias-Valencia.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, District Judge.

TJOFLAT, Circuit Judge:

 Section 955a(c) of Title 21 of the United States Code makes it a crime "for any person on board any vessel within the customs waters of the United States to knowingly or intentionally ... possess with intent to ... distribute" marijuana. This appeal questions whether the Congress, in enacting this statute, intended to reach the possession of marijuana by foreigners aboard a foreign vessel on the high seas.[1] The district court held that Congress did not so intend and dismissed the indictment.[2] We reverse.

## I.

On January 7, 1984, the U.S. Coast Guard cutter *Escape*, while patrolling an area in the Caribbean Sea known as the Mysteriosa Bank of the Yucatan Pass, a thoroughfare used to transport marijuana from Colombia, South America to the United States, sited a shrimp boat, the *El Don*, lying dead in the water, apparently having engine trouble. The Coast Guard suspected that the *El Don* was a smuggling vessel; she was not rigged for fishing, flew no flag, and bore no markings indicating her home port. Exercising the "right of approach,"[3] the *Escape* pulled alongside the *El Don*, and several Coast Guardsmen boarded her to examine her registration papers and determine her identity. In the course of accomplishing this, the Coast Guardsmen discovered a cargo in excess of four and one-half tons of marijuana in the vessel's hold.

The Coast Guardsmen determined that the *El Don* was of Panamanian registry. This information was relayed to the U.S. State Department which, in turn, communicated with the Panamanian government. Thereafter, the Coast Guard, presumably with Panama's approval, instructed the *Escape* to seize the *El Don* and its crew and to take them to Key West, Florida for prosecution. The *Escape* followed this instruction.

On January 20, 1984, in the Southern District of Florida, the *El Don*'s crew, the appellees here, were indicted under the Marijuana on the High Seas Act of 1980[4] and the Comprehensive Drug Abuse Prevention and Control Act of 1970[5] in five

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The high seas lie seaward of a nation's territorial sea, which is the band of water that extends up to three miles out from the coast. No nation may assert sovereignty over the high seas. *United States v. Williams*, 617 F.2d 1063, 1073 n. 6 (5th Cir.1980) (en banc) (quoting *United States v. Warren*, 578 F.2d 1058, 1064–65 n. 4 (5th Cir.1978) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980).

2. The indictment contained five counts; only the second count charged a 21 U.S.C. § 955a(c) (1982) offense. *See infra* text at 1150. The district court's order of dismissal does not inform us as to the reason why the court dismissed the other four counts. We pose the question for review as stated because it is the only question the district court seems to have addressed.

3. The "right of approach" is a doctrine of international maritime common law that bestows a nation's warship with the authority to hail and board an unidentified vessel to ascertain its nationality. *Williams*, 617 F.2d at 1082 (quoting *United States v. Cortes*, 588 F.2d 106, 110–11 (5th Cir.1979)). If suspicions as to the vessel's nationality persist, as they well may even after the captain has declared her nation of registry, the inquiring nation may board the vessel and search for registration papers or other identification in order to verify the vessel's nationality. *Williams*, 617 F.2d at 1082; *United States v. Postal*, 589 F.2d 862, 870–71 (5th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979). The "right of approach" is codified by article 22 of the Convention on the High Seas, *opened for signature* April 19, 1958, 13 U.S.T. 2312, T.I.A.S. No. 5200, *see Postal*, 589 F.2d at 870, of which both the United States and Panama are signatories.

4. 21 U.S.C. § 955a et seq. (1982).

5. The Comprehensive Drug Abuse Prevention and Control Act of 1970 includes numerous provisions scattered throughout titles 18, 19, 21, 26, 40, 42, 46, and 49 of the United States Code. Count V of the indictment charged a violation

counts, as follows. Count I charged the defendants under 21 U.S.C. § 955c (1982) [6] with conspiring to possess marijuana in United States customs waters in violation of 21 U.S.C. § 955a(c) (1982). [7] Count II charged the defendants with the substantive offense, violating section 955a(c). Count III charged the defendants, again under 21 U.S.C. § 955c, with conspiring to possess marijuana with intent to import it, or knowing that it will be imported, into the United States in violation of 21 U.S.C. § 955a(d) (1982), [8] and count IV charged the substantive section 955a(d) offense. Count V charged the defendants with conspiring, in violation of 21 U.S.C. § 963 (1982), to import marijuana into the United States from a place outside thereof in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) (1982). [9]

The defendants moved the district court to dismiss all five counts of the indictment on the ground that the sections of the Marijuana on the High Seas Act on which the counts were based were so vague and overbroad as to violate the due process clause of the fifth amendment. They attacked counts I and II on an additional ground; Congress did not intend to make it a crime for a person not a United States citizen to conspire to possess, or to possess, marijuana on a foreign vessel on the high seas. The defendants also moved the court to suppress the marijuana the Coast Guard had taken from the *El Don*, claiming that the seizure violated the fourth amendment.

The district court, on March 30, 1984, convened a hearing on the defendants' motions. At that and subsequent hearings, the parties produced the facts we have recited, albeit in somewhat greater detail, on the issue of the validity of the Coast Guard's search and seizure of the *El Don*. Following the hearings, the court, in a memorandum order, dismissed the indictment. The court gave no reasons for its action, except as to count II. [10] It conclud-

---

of three of the Act's provisions. *See infra* note 9.

**6.** 21 U.S.C. § 955c (1982) provides:
**§ 955c. Attempt or Conspiracy**
Any person who attempts or conspires to commit any offense defined in sections 955a to 955d of this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**7.** 21 U.S.C. § 955a(c) (1982) provides:
**(c) Vessels within customs waters of United States**
It is unlawful for any person on board any vessel within the customs waters of the United States to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

**8.** 21 U.S.C. § 955a(d) (1982) provides:
**(d) Intent or knowledge of unlawful importation into United States**
It is unlawful for any person to possess, manufacture, or distribute a controlled substance—
(1) intending that it be unlawfully imported into the United States; or
(2) knowing that it will be unlawfully imported into the United States.

**9.** 21 U.S.C. § 952(a) (1982) provides in pertinent part:

**§ 952. Importation of controlled substances**
....
It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, [controlled substances]....
21 U.S.C. § 960(a)(1) (1982) provides:
**§ 960. Prohibited acts A**
**(a) Unlawful acts**
Any person who—
(1) contrary to section 952, 953, or 957 of this title, knowingly or intentionally imports or exports a controlled substance, ... shall be punished as provided in subsection (b) of this section.
21 U.S.C. § 963 (1982) provides:
**§ 963. Attempt and conspiracy**
Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**10.** The district court summarily dismissed all five counts of the indictment, stating it "lack[ed] jurisdiction over the ... cause and the defendants indicted pursuant to 21 U.S.C. § 955(a) and § 963." The court obviously had subject matter jurisdiction to try the crimes charged here, Congress having conferred upon the federal district

ed that count II failed to state an offense because the defendants' possession of marijuana had taken place on a foreign vessel located on the high seas, i.e., beyond the territorial waters of the United States, and section 955a(c) did not reach such conduct. The government now appeals.

■ Before addressing the merits of the government's appeal, we should point out the issues that are not before us. First, we need not consider whether the provisions of the Marijuana on the High Seas Act underpinning the indictment are unconstitutional. The district court did not hold that they are, and the issue has not been presented in the parties' briefs. Second, we need not consider the sufficiency of counts III, IV and V of the indictment because the defendants concede their sufficiency to state federal offenses. Accordingly, these counts will not be discussed. Third, the district court, in view of its disposition of the defendants' motions to dismiss the indictment, did not pass on the validity of the Coast Guard's search and seizure of the *El Don*. We likewise do not pass on the issue.[11]

This leaves two questions for us to decide. First, did the Congress, in enacting section 955a(c) of the Marijuana on the High Seas Act, intend to reach foreign flag

vessels on the high seas? If not, count II was properly dismissed. Second, and apart from the first question, does count I of the indictment allege a section 955c conspiracy?

## II.

### A.

Section 955a(c) states:

It is unlawful for any person on board any vessel within the customs waters of the United States to knowingly or intentionally ... possess with intent to ... distribute [marijuana].

The "customs waters of the United States" are defined [12] as:

The term "customs waters" means, in the case of a foreign vessel subject to a treaty or other arrangement between a foreign government and the United States enabling or permitting the authorities of the United States to board, examine, search, seize, or otherwise to enforce upon such vessel upon the high seas the laws of the United States, the waters within such distance of the coast of the United States as the said authorities are or may be so enabled or permitted by such treaty or arrangement and, in the

courts the power to adjudicate all cases involving crimes against the United States. 18 U.S.C. § 3231 (1982) provides in pertinent part: "The district courts of the United States shall have original jurisdiction ... of all offenses against the laws of the United States."

Each of the five counts of the indictment in this case alleges that the defendants violated one or more federal criminal statutes; each count states an "offense against the laws of the United States," tracking the language of the statute and setting forth the essential elements of the crime. *See United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 283, 78 L.Ed.2d 261 (1983).

The district court also had jurisdiction over the defendants. Jurisdiction over the person of a defendant "in a federal criminal trial whether citizen or alien, whether arrested within or beyond the territory of the United States," is not subject to challenge on the ground that the defendant's presence before the court was unlawfully secured. *United States v. Winter*, 509 F.2d 975, 985–86 (5th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

**11.** We also do not decide two issues the defendants raise in their briefs. The first is that the multiple offenses charged are barred by the double jeopardy clause because they have some common elements. The second is that section 21 U.S.C. § 955a(c) (1982) violates the ex post facto clause and due process because it enables the Executive Branch to designate "customs waters" by "treaty or other arrangement" with another nation and thus to make innocent conduct criminal after the defendant has engaged in such conduct. The defendants raised neither of these issues in the district court; accordingly, we decline to consider them. *United States v. Vance*, 730 F.2d 736, 738 (11th Cir.1984); *Ross v. Hopper*, 716 F.2d 1528, 1535 (11th Cir.1983); *United States v. Hill*, 622 F.2d 900, 908 (5th Cir.1980).

**12.** The Marijuana on the High Seas Act, 21 U.S.C. § 955a, adopts the definition for "customs waters" set out by 19 U.S.C. § 1401(j) (1982). *See* 21 U.S.C. § 955b(a) (1982).

case of every other vessel, the waters within four leagues of the coast of the United States [i.e., within the twelve mile limit].

Count II of the indictment alleges that the defendants possessed the marijuana in this case "within the customs waters of the United States," meaning that the possession occurred either within twelve miles of the coastline of the United States, the area normally considered as the customs waters, or within such area on the high seas beyond the twelve mile limit as the United States and a foreign government have, by "treaty or other arrangement," designated as an area in which the United States can board, seize, or search a vessel flying the flag of such foreign government for the purpose of enforcing the laws of the United States. Count I charged the defendants with conspiring to possess the marijuana within such customs waters. The district court dismissed counts I and II because the evidence adduced at the suppression hearing disclosed that the *El Don* and the defendants were seized at a point hundreds of miles from the United States and therefore, the district court assumed, far beyond the "customs waters" Congress contemplated under section 955a(c).

■■ The district court erred in making this assumption. To be sure, the *El Don* was beyond the twelve mile limit and thus outside the statutorily measured customs waters. But this did not end the inquiry. The court should have recognized that the point on the high seas of the *El Don*'s

seizure could have been "customs waters" designated by the United States and Panama, by "treaty or other arrangement," as a place where the United States could seize and prosecute under section 955a(c) those in possession of marijuana aboard a Panamanian vessel. The court should have allowed the government to prove such a designation at trial. The legislative history of the section 955b(a) customs waters definition makes it clear that Congress intended section 955a(c) to reach foreign citizens aboard foreign flag vessels in areas on the high seas designated by the United States and the nation whose flag the vessel flies as places where the laws of the United States will be enforced.[13]

Congress first formulated the definition of "customs waters" when it passed the Anti-Smuggling Act of 1935, 19 U.S.C. §§ 1701–1711 (1982),[14] to reduce the smuggling of liquor into the United States in contravention of our revenue laws. Prior to the passage of the Anti-Smuggling Act, the government could only prosecute smugglers in vessels seized within the statutory twelve-mile customs waters area; smuggling vessels could hover beyond that twelve-mile limit with impunity. The United States did have liquor treaties with sixteen nations, which allowed it to seize a treaty nation's vessel and to enforce the anti-smuggling laws if the vessel was caught within one hour's sailing distance of the coast of the United States, but these treaties were not self-executing. Absent statutory authority, the United States lacked the power to apply its penal laws to

---

**13.** It is clear that Congress has the power to enact criminal laws whose application extend into the high seas, beyond the territory and the territorial waters of the United States; "Congress may attach extraterritorial effect to its penal enactments." *United States v. Baker,* 609 F.2d 134, 136 (5th Cir.1980). *See United States v. Flores,* 289 U.S. 137, 151–54, 53 S.Ct. 580, 583–84, 77 L.Ed. 1086 (1932); *United States v. Cadena,* 585 F.2d 1252, 1257 (5th Cir.1978); *United States v. Winter,* 509 F.2d 975, 980–83 (5th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

**14.** The Anti-Smuggling Act of 1935, in 19 U.S.C. § 1709(c) (1982), defines "customs waters" as follows:

The term "customs waters" means, in the case of a foreign vessel subject to a treaty or other arrangement between a foreign government and the United States enabling or permitting the authorities of the United States to board, examine, search, seize, or otherwise to enforce upon such vessel upon the high seas the laws of the United States, the waters within such distance of the coast of the United States as the said authorities are or may be so enabled or permitted by such treaty or arrangement and, in the case of every other vessel, the waters within four leagues of the coast of the United States.

a treaty nation's vessel located outside the twelve-mile limit, yet within one hour's sailing distance from the shore. H.R.Rep. No. 868, 74th Cong., 1st Sess. 4 (1935); S.Rep. No. 1036, 74th Cong., 1st Sess. 4 (1935). Congress solved this problem by passing the Anti-Smuggling Act. The Act created customs enforcement areas [15] that extended into the high seas beyond the twelve-mile limit; "customs waters" means "twelve miles in the case of domestic or nontreaty foreign vessels [and] treaty distance ... in the case of foreign treaty vessels." H.R.Rep. No. 868, 74th Cong., 1st Sess. 7 (1935); S.Rep. No. 1036, 74th Cong., 1st Sess. 11 (1935).

Anticipating that smuggling vessels flying the flag of a treaty nation would attempt to avoid seizure and prosecution under the Act by hovering just beyond a one hour's sailing distance from our shore, Congress provided that the one hour sailing distance could be extended by an "arrangement" between the United States and the treaty nation. What Congress contemplated was that the Executive Branch could arrange with a treaty nation to create instantaneously a customs enforcement area for one hundred miles [16] around a particular hovering vessel; such an arrangement would be in the nature of an "executive agreement." [17] Congress therefore inserted the term "arrangement" in its definition of "customs waters" to ensure that the United States would have a means of combatting smugglers trolling just beyond the treaty extended customs waters, waiting for a chance to strike.[18]

---

**15.** 19 U.S.C. § 1701 provides:

§ 1701. Customs-enforcement area

(a) Establishment; extent and duration; enforcement of laws applicable to waters adjacent to customs waters

Whenever the President finds and declares that at any place or within any area on the high seas adjacent to but outside customs waters any vessel or vessels hover or are being kept off the coast of the United States and that, by virtue of the presence of any such vessel or vessels at such place or within such area, the unlawful introduction or removal into or from the United States of any merchandise or person is being or may be occasioned, promoted, or threatened, the place or area so found and declared shall constitute a customs-enforcement area for the purposes of this Act. Only such waters on the high seas shall be within a customs-enforcement area as the President finds and declares are in such proximity to such vessel or vessels that such unlawful introduction or removal of merchandise or persons may be carried on by or to or from such vessel or vessels. No customs-enforcement area shall include any waters more than one hundred nautical miles from the place or immediate area where the President declares such vessel or vessels are hovering or are being kept and, notwithstanding the foregoing provision, shall not include any waters more than fifty nautical miles outwards from the outer limit of customs waters. Whenever the President finds that, within any customs-enforcement area, the circumstances no longer exist which gave rise to the declaration of such area as a customs-enforcement area, he shall so declare, and thereafter, and until a further finding and declaration is made under this subsection with respect to waters within such area, no waters within such area shall constitute a part of such customs-enforcement area. The provisions of law applying to the high seas adjacent to customs waters of the United States shall be enforced in a customs-enforcement area upon any vessel, merchandise, or person found therein.

**16.** *See supra* note 15.

**17.** Congress gave us some guidance as to what an "arrangement" is. By way of explanation, Congress said:

This section, at the same time, specifically preserves as a fundamental principle of the bill the rights of foreign vessels under the various hour sailing distance liquor treaties. Except by *special arrangement* with the treaty nation concerned, no treaty vessel can be seized under any provision of the bill beyond treaty limits. That is to say, customs control cannot be exercised over a treaty vessel in a customs enforcement area if the vessel is beyond one hour's sailing distance of the shore, except by *express consent* of the treaty nation concerned. It is believed that this provision will stimulate and serve as a basis for *special executive agreements with treaty nations* with respect to individual vessels, which will permit enforcement of laws from time to time against notorious, foreign smuggling vessels, sailing under the protection of treaty flags, at places and under circumstances not covered generally by the particular treaty.

H.R.Rep. No. 868, 74th Cong., 1st Sess. 5 (1935); S.Rep. No. 1036, 74th Cong., 1st Sess. 9 (1935) (emphasis added).

**18.** The Anti-Smuggling Act's definition of "customs waters" was also incorporated into the

■ Congress' goal when it enacted section 955a(c) of the Marijuana on the High Seas Act was not unlike the one Congress had in mind when it passed the Anti-Smuggling Act; both statutes authorize the prosecution of smugglers hovering on the high seas beyond the twelve mile limit. Under section 955a(c), the government can now reach narcotics smugglers aboard vessels of nontreaty nations within twelve miles of our coast and those aboard vessels of treaty nations within the area on the high seas designated by treaty or other arrangement. Whether such a treaty or other arrangement existed between the United States and Panama concerning the *El Don* is a mixed question of fact and law which the government should be entitled to address at trial.[19]

The defendants argue that Congress did not intend that "customs waters" be established in areas as remote as the one in which the *El Don* was seized, because this would transgress principles of international law. It is true that Congress did not intend to transgress international law; it limited the reach of the Marijuana on the High Seas Act, declaring that the Act was "designed to prohibit all acts of illicit trafficking in controlled substances on the high seas which the United States can reach under international law."[20] H.R.Rep. No. 323, 96th Cong., 1st Sess. 11 (1979). This limitation, however, would not have precluded the designation, by treaty or other arrangement, of the place where the *El Don* was seized as "customs waters."

Nothing in international law prohibits two nations from entering into a treaty, which may be amended by other arrangement, to extend the customs waters and the reach of the domestic law of one of the nations into the high seas. The defendants cite no authority to the contrary. Even absent a treaty or arrangement, the United States could, under the "protective principle" of international law, prosecute foreign nationals on foreign vessels on the high seas for possession of narcotics. The protective principle permits a nation to assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security or could potentially interfere with the operation of its governmental functions. *United States v. Marino-Garcia*, 679 F.2d 1373, 1381 & n. 14 (11th Cir.1982), *cert. denied*, 459 U.S. 1114, 103 S.Ct. 748, 74 L.Ed.2d 967 (1983); *United States v. Columba-Colella*, 604 F.2d 356, 358 (5th Cir.1979); *Rivard v. United States*, 375 F.2d 882, 885, n. 7 (5th Cir.1967), *cert. denied*, 389 U.S. 884, 88 S.Ct. 151, 19 L.Ed.2d 181 (1967).[21] The defendants' argument is thus without merit. Count II of the indictment stated a section 955a(c) offense, and the district court erred in dismissing it.

### B.

The defendants' attack on count II having collapsed, it follows that their challenge to count I, alleging a conspiracy to violate section 955a(c), must also fail. Section

---

Tariff Act of 1930 at 19 U.S.C. § 1401(j), *see supra* p. 1151, so that the provisions of the Tariff Act could also apply in the expanded customs waters area. H.R.Rep. No. 868, 74th Cong., 1st Sess. 14 (1935); S.Rep. No. 1036, 74th Cong., 1st Sess. 9 (1935).

**19.** See, for example, *United States v. Loalza-Vasquez*, 735 F.2d 153 (5th Cir.1984), a section 955a(c) prosecution in which the district court permitted the government to present evidence at trial that the United States had made an arrangement with Panama to extend customs waters to the defendants' shrimper on the high seas. The government proved an "arrangement" and the defendants were convicted. The Fifth Circuit affirmed.

**20.** "The law of nations permits the exercise of [extraterritorial] criminal jurisdiction by a nation under five general principles. They are the territorial, national, protective, universality and passive personality principles." *Rivard v. United States*, 375 F.2d 882, 885 (5th Cir.), *cert. denied*, 384 U.S. 885, 88 S.Ct. 151, 19 L.Ed.2d 181 (1967).

**21.** Congress grounded section 955a(c) in the protective principle of international law. In passing the provision, Congress observed that the United States may, consistent with the protective principle, assert jurisdiction over activity within the customs waters to protect its customs and public health interests. H.R.Rep. No. 323, 96th Cong., 1st Sess. 10, 12–13 (1979).

955c [22] does not require the government to prove an overt act; it must only establish that the defendants intended to possess marijuana, for example, within "customs waters." These waters, as we have indicated, include those within the twelve mile limit and those beyond which are established by treaty or other arrangement. *Cf. United States v. Jonas,* 639 F.2d 200, 205 (5th Cir.1981); *United States v. DeWeese,* 632 F.2d 1267, 1271 (5th Cir.1980), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 188 (1981); *United States v. Ricardo,* 619 F.2d 1124, 1129 (5th Cir.), *cert. denied,* 449 U.S. 1063, 101 S.Ct. 789, 66 L.Ed.2d 607 (1980) (all interpreting the drug smuggling conspiracy provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 846, 963 (1982)); *accord United States v. Bodden,* 736 F.2d 142 (4th Cir.1984) (affirming conspiracy conviction pursuant to 21 U.S.C. § 955c of defendants arrested on the high seas). As with count II, the Government should have the opportunity to establish the elements of count I at trial, including whether the defendants conspired to possess the marijuana with intent to distribute while in customs waters.

The judgment of the district court is reversed and the case is remanded for further proceedings.

REVERSED and REMANDED.