**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Carlos BORRERO–GONZALEZ, Jesus Granja-Salazar, Jose Vallecilla-Meza, Alcides Parra-Castano, Henry Cortez-Perez, and Angel Calimeno-Gomez, Defendants-Appellees.**

No. 85–5041.

United States Court of Appeals, Eleventh Circuit.

July 18, 1986.

Stanley Marcus, U.S. Atty., Linda Collins-Hertz, Andrea Simonton, Sonia O'Donnell, Asst. U.S. Attys., Miami, Fla., for U.S.

Theodore J. Sakowitz, Federal Public Defender, Miguel Caridad, Asst. Federal Public Defender, for Borrero-Gonz.

Before GODBOLD, Chief Judge, HILL and ANDERSON, Circuit Judges.

PER CURIAM:

The government appeals from the dismissal of a marijuana indictment. The only issue is whether the district court erred in concluding it lacked subject matter jurisdiction because the vessel was not apprehended in United States custom waters. This circuit has addressed this issue several times since the dismissal of this action. Our decisions indicate the district court applied incorrect law.

We therefore vacate and remand for further proceedings in light of *United States v. Romero-Galue,* 757 F.2d 1147 (11th Cir. 1985) and *United States v. Gonzalez,* 776 F.2d 931 (11th Cir.1985).

VACATED and REMANDED.

HILL, Circuit Judge, specially concurring:

I concur only because our panel is bound by *United States v. Santa-Lara,* 783 F.2d 989 (11th Cir.1986); *United States v. Gonzalez,* 776 F.2d 931 (11th Cir.1985); *United States v. Bent-Santana,* 774 F.2d 1545 (11th Cir.1985); *United States v. Romero-Galue,* 757 F.2d 1147 (11th Cir.1985). Our court has voted not to re-hear *Santa Lara* en banc.

I am troubled by the rule of law established in these cases, which seems to me repugnant to our fundamental concepts of criminal law. This rule has the appearance of law enforcement practices in nations less sensitive to the rights of its citizens than the United States. In these cases, we approve of finding conduct to be criminal which transgresses no law until the executive elects to make it criminal and takes action toward that end. In this country, Congress has the power and duty to define what conduct is criminal. An individual is free to act, though perhaps contrary to the wishes of the government and the overwhelming but unlegislated wishes of the people, unless and until Congress has proscribed the conduct.

The defendants in this case—and in the cases which control our decision—were charged with utterly reprehensible conduct. They were in possession of a large quantity of contraband drugs aboard a vessel in international waters near our coast and our customs waters. The quantity of contraband suffices to prove intent to distribute it. *See, e.g., United States v. Ceballos,* 706 F.2d 1198, 1202 (11th Cir.1983). One yearns to put a stop to their conduct in order to protect our people. Yet, the defendants' acts, by themselves, did not transgress the law for which they were indicted, 21 U.S.C. § 955a(c). That statute provides that "[i]t is unlawful for any person on board any vessel *within the customs waters of the United States* to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance." 21 U.S.C. § 955a(c) (1982) (emphasis added). The definition of "customs waters" is found in 19 U.S.C. § 1401(j) (1982):

> The term "customs waters" means, in the case of a foreign vessel subject to a treaty or other arrangement between a foreign government and the United States enabling or permitting the authorities of the United States to board, examine, search, seize, or otherwise to enforce upon such vessel upon the high seas the laws of the United States, the waters within such distance of the coast of the United States as the said authorities are or may be so enabled or permitted by such treaty or arrangement and, in the case of every other vessel, the waters within four leagues of the coast of the United States [i.e., within the twelve mile limit].

On its face, the statutory language appears straight-forward. To find out if pos-

session of a controlled substance will violate 21 U.S.C. § 955a(c), one must first determine whether the vessel's nation of registry has, by treaty or other arrangement with the United States, agreed to an extension of United States customs waters; if so, a possessor aboard that vessel should not enter waters covered by such an extension. Construed in this fashion, an offender is placed on notice, before acting, of the criminality of the contemplated conduct.

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972)(footnotes omitted). *See also Kolender v. Lawson,* 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982); *Smith v. Goguen,* 415 U.S. 566, 572–74, 94 S.Ct. 1242, 1246–47, 39 L.Ed.2d 605 (1974); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

The problem, however, arises out of the words "other arrangement" in section 1401(j). The "arrangement" works this way: A Coast Guard vessel encounters a foreign flag vessel, which the officers believe is loaded with contraband drugs, outside the customs waters. The skipper radios the mainland and telephone calls follow

to the foreign nation. That nation agrees to an "arrangement" creating, instantly, United States customs waters around and encircling the foreign flag vessel.

Theretofore, the possession did not violate section 955a(c) because the foreign vessel was not within United States customs waters. Law enforcement officers, however, converted that non-criminal conduct into a violation of section 955a(c) by supplying the missing element of the crime, United States customs waters.

This court did not reach this issue in *Romero-Galue:*

> We also do not decide two issues the defendants raise in their briefs.... The second is that section [sic] 21 U.S.C. § 955a(c) (1982) violates the ex post facto clause and due process because *it enables the Executive Branch to designate "customs waters" by "treaty or other arrangement" with another nation and thus to make innocent conduct criminal after the defendant has engaged in such conduct.* The defendants raised neither of these issues in the district court; accordingly, we decline to consider them.

*Romero-Galue,* 757 F.2d at 1151 n. 11 (emphasis added). The issue was addressed in *Gonzalez,* where the court commenced its discussion by stating that "[t]he criminal violation [under section 955a(c)] does require possession within 'customs waters' and the appellants were not in 'customs waters' until the foreign government consented [in response to a telephone request]." *Gonzalez,* 776 F.2d at 938. Nevertheless, the discussion of the foreign nation's consent as an "arrangement," culminated with the statement that *"[i]t is misleading, therefore, to consider that consent an element of the offense....." Id.* at 940 (emphasis in original).

Yet it appears to me that if the criminal violation requires proof that the possession was within customs waters, that is, by definition, an element of the crime as defined by Congress. If "customs waters" was not an essential element, one must wonder why

such waters were created by a *post hoc* "arrangement" and why the prosecutor charged in the indictment in this case that the defendants' possession occurred "while aboard the vessel M/V ENSA QUEMADA, *within the customs waters of the United States....*" (R. 1–1) (emphasis added). Indeed, in *United States v. Salvat,* 779 F.2d 58 (11th Cir.1985) (unpublished opinion), the district court instructed the jury, with reference to the charge of violating 21 U.S.C. § 955a(c), as follows:

> In order to establish the offense proscribed by that statute, the Government must prove each of the following elements beyond a reasonable doubt:
>
> First: That the defendant knowingly and willfully possessed marijuana as charged; and
>
> Second: That they possessed the substance with the intent to distribute it; and
>
> Third: That the defendant did so while on board a vessel within the Customs waters of the United States.

(R 3–248 to 250). This instruction followed the pattern proposed by the Committee on Pattern Jury Instructions of the District Judges Association of the Eleventh Circuit.

I am not concerned with the arrest of persons who have completed the commission of one or more crimes—who have committed all the acts essential to conviction. If arrangements must be made with other nations in order to reach and arrest them, the making of such arrangements is law enforcement, not lawmaking. *Cf. United States v. Reeh,* 780 F.2d 1541 (11th Cir. 1986) (United States citizens charged with violating 21 U.S.C. § 955a(b), which prohibits possession of controlled substances with intent to distribute by any United States citizen aboard any vessel; consent by flag state constituted "special arrangement" under 19 U.S.C. §§ 1581(h), 1587(a) which authorizes boarding and examination of foreign vessels in international waters). Moreover, for the reasons discussed above, I am not concerned with the situation where a treaty or other arrangement between the United States and a foreign na-

tion gives advance notice that the United States customs waters have been extended with respect to all of the foreign nation's vessels. My concern is this: In our country, law enforcement officers may only enforce the law made by Congress, while in totalitarian nations, law enforcement officers *are* the law, capable of creating offenses *ad hoc* and *post hoc. Cf. Johnson v. United States,* 333 U.S. 10, 17, 68 S.Ct. 367, 370, 92 L.Ed. 436 (1948). It is important that we maintain this distinction—even more important than the vindication of our repulsion at appellant's conduct.

Yet, being bound by our precedent until and unless it be properly altered, I concur.