[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11085
Non-Argument Calendar
_____

D.C. Docket No. 4:09-cr-00006-CAP-WEJ-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HOWARD GREGORY CORDELL,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 31, 2013)

Before HULL, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Howard Cordell appeals his conviction for bank fraud in violation 18 U.S.C. § 1344.  On appeal, Cordell argues that: (1) the district court erroneously denied his motions to dismiss the indictment for lack of jurisdiction; and (2) the district court erroneously imposed restitution.  For the reasons set forth below, we affirm Cordell's conviction and sentence.

I.

In January 2011, a federal grand jury returned a second superseding indictment, charging Cordell with several offenses, including two counts of bank fraud in violation of 18 U.S.C. § 1344.  As to Count 3, one of the bank fraud charges, the indictment alleged that, on or about August 13, 2004, Cordell executed a scheme to defraud Washington Mutual Bank ("Washington Mutual"), a financial institution.  Specifically, Cordell obtained a mortgage from Washington Mutual for $1,000,000 to refinance the purchase of a house.  He obtained the mortgage through an application and related financial disclosure forms in which he: (1) falsely inflated his annual income; (2) misrepresented his assets; and (3) concealed financial liabilities.

Although Cordell was represented by counsel, he filed a *pro se* motion to dismiss the indictment for lack of jurisdiction.  He raised numerous arguments in support of his motion, including that the indictment failed to identify a statute that authorizes the district court to adjudicate a criminal matter over a citizen of "a

2

Sovereign State of the Union." He further argued that Title 18 is unconstitutional because it was never properly voted into law by Congress, and, thus, the district court lacks jurisdiction under 18 U.S.C. § 3231 to adjudicate his case. He also claimed that the criminal statutes referenced in the indictment exceed the federal government's enumerated powers and violate federalism principles under the Tenth Amendment. Subsequently, Cordell filed a *pro se* amended motion to dismiss the indictment, raising similar jurisdictional arguments.

The district court denied Cordell's motions to dismiss, noting that each of his challenges to the court's jurisdiction has been raised and repeatedly rejected by courts. Cordell was charged with violations of federal law, and, thus, the United States has jurisdiction over this criminal action. Additionally, Cordell's argument that § 3231 was never properly enacted "has many times over been shown to be frivolous," and his Tenth Amendment challenge is also meritless. Because his arguments were meritless, the court denied his motions to dismiss the indictment.

Subsequently, pursuant to a written plea agreement, Cordell pled guilty to Count 3, which charged him with bank fraud. The agreement provided that, if the court approved of the "binding plea agreement," Cordell would receive a 27-month sentence. Further, the plea agreement contained a limited appeal waiver, stating that Cordell waived his right to appeal except that he may appeal the district court's ruling on his jurisdictional motions to dismiss and its decision as to the

amount of restitution.  The agreement further provided that Cordell would pay full restitution to all victims of his offense.

According to the presentence investigation report ("PSI"), Cordell was a realtor and real estate developer and, in March 2003, he bought a house located at 179 Old Mill Road in Cartersville, Georgia (the "Old Mill Road property") from Steve Hatley.  The property was listed with a sales price of $950,000, and Cordell agreed to buy it with the condition that Hatley inflate the price by $307,000 and give the additional mortgage money to Cordell.  Cordell obtained a mortgage of approximately $1,244,000 from Washington Mutual.

In August 2004, Cordell refinanced the Old Mill Road property, and he obtained a mortgage from Washington Mutual for $1,000,000.  His mortgage application contained false claims about his income and assets.  Subsequently, on September 1, 2004, the property was destroyed by arson, and Cordell never made a payment on the new mortgage.  In November 2004, Cordell's insurance carrier, Pacific Indemnity Insurance ("Pacific Indemnity"), paid the mortgage with Washington Mutual in full with a check in the amount of $1,005,804.20.  Pacific Indemnity did not attempt to obtain the title to the property pending its investigation into the arson, and it was not aware that Georgia law required Washington Mutual to release its lien within 60 days of the loan repayment. Washington Mutual discharged its lien in January 2005.  In October 2005, after the

4

lien was lifted, Cordell sold the Old Mill Road property for $900,000, and he kept a portion of the proceeds and used the rest to pay debts and expenses. The PSI indicated that $1,269,500 was the actual loss for Sentencing Guidelines and restitution purposes. Specifically, Cordell received this money as a result of his fraudulent conduct in the two financing transactions of the Old Mill Road property and from his sale of the property after the arson. The PSI stated that Pacific Indemnity paid all claims resulting from the arson and should receive the full restitution amount.

The PSI also included information about related civil litigation. In August 2005, Cordell sued Pacific Indemnity in federal court, and the case went to trial. On April 9, 2008, the jury entered a verdict in favor of Pacific Indemnity, and the court entered judgment against Cordell in the amount of $1,055,804.20, plus $58,311.50 in costs, resulting in a total award of $1,114,115.70. Ultimately, the PSI indicated that restitution in the amount of $1,269,500 should be paid to Pacific Indemnity. The PSI noted that Cordell's binding plea agreement provided for a 27-month sentence.

Cordell objected to the PSI's factual description of his offense to the extent that it related to the loss calculation and restitution amount. As to restitution, Cordell asserted that the loss in this case did not result from his conduct but, instead, it resulted from Pacific Indemnity's failure to protect its interest in the

property.  According to Cordell, he pledged the property that was obtained through the bank fraud as collateral, and, under "crediting rules," he is entitled to a credit in the amount of the value of the collateral.  Cordell asserted that he should not be held responsible because Pacific Indemnity lost its interest in the property either intentionally or through neglect.  Finally, Pacific Indemnity received a judgment against Cordell that is more than sufficient to cover the restitution amount.

At sentencing, Cordell reasserted his objection to the imposition of restitution, arguing that, at the time when the property transaction occurred, Pacific Indemnity had an "absolute right to take a security interest in the real estate which served as collateral for [the] loan."  Because the company abandoned its right to foreclose on the property, either through negligence or an intentional act, it should not receive any restitution.

The court clarified that Cordell's argument was that "when the insurance company paid off the bank, they failed to take a security interest in the property." Cordell asserted that, even though he "pocketed" the $900,000 from selling the property, Pacific Indemnity should not recover its losses.  The court disagreed, and it overruled his objection that Pacific Indemnity was not entitled to restitution.

Subsequently, the government presented evidence related to the amount of Pacific Indemnity's loss, including testimony from A.J. Singh, a special agent with the Federal Bureau of Investigation ("FBI") who investigates fraud cases.  The

government also submitted the check that Pacific Indemnity wrote to Washington Mutual, which was in the amount of $1,005,804.20.

The court found that, based on the preponderance of the evidence, the loss and restitution amount was $1,005,804.20.  In sentencing Cordell, the court noted that his binding plea agreement provided for a sentence of 27 months.  Ultimately, the court sentenced Cordell to 27 months' imprisonment, 5 years' supervised release, and $1,005,804.20 restitution.

## II.

"We review a district court's denial of a motion to dismiss the indictment for an abuse of discretion."  *United States v. Clarke*, 312 F.3d 1343, 1345 n.1 (11th Cir. 2002).  Further, we review jurisdictional issues *de novo.  United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009).  Under § 3231, the district court has original jurisdiction over "all offenses against the laws of the United States."  18 U.S.C. § 3231.

An appellant abandons an issue where he fails to develop any argument on the issue in his initial appeal brief.  *See United States v. Woods*, 684 F.3d 1045, 1064 n.23 (11th Cir. 2012) (deeming an issue abandoned where the appellant failed to develop any argument on the issue in his opening brief).  Thus, "[w]e may decline to address an argument where a party fails to provide arguments on the

merits of an issue in its initial or reply brief." *United States v. Gupta*, 463 F.3d 1182, 1195 (11th Cir. 2006).

In the district court, Cordell filed two *pro se* motions to dismiss the indictment, raising numerous challenges to the district court's jurisdiction over his criminal prosecution. In his opening appeal brief, Cordell asserts that he would like to pursue his arguments that the indictment should be dismissed because: (1) the United States has no statutory authority to prosecute criminal cases; (2) the indictment failed to allege an injury or identify an injured party; (3) due to legislative irregularities in 1947 and 1948, the entirety of Title 18 is void; and (4) the indictment violated the Tenth Amendment. However, Cordell fails to develop any supporting arguments regarding the merits of these conclusory assertions. Instead, he merely notes that he made these arguments before the district court and that the court rejected them, but he does not cite to any legal authority to support his claims or explain why the district court erred in rejecting them. In his reply brief, Cordell suggests that he has adequately developed his arguments because, in his plea agreement, he expressly reserved his right to appeal the denial of his motions to dismiss the indictment. However, Cordell's preservation of his right to an appeal is not relevant to whether he adequately developed any supporting arguments in his appeal brief.

Cordell also claims that, although his opening brief was "succinct," he made more than a passing reference to his claims. In fact, a review of his opening brief shows that Cordell merely lists four jurisdictional claims without further discussion or analysis. Because Cordell fails to adequately develop any arguments related to the denial of his motions to dismiss the indictment, we may decline to review this issue. *See Woods*, 684 F.3d at 1064 n.23; *Gupta*, 463 F.3d at 1195.

Regardless, even if Cordell had not abandoned this issue on appeal, the district court did not err in rejecting his jurisdictional challenges to the indictment. Cordell was charged with violating 18 U.S.C. §§ 1344, 1014, and 1957, all of which are offenses against the United States. As such, the district court had jurisdiction over his criminal prosecution or those offenses. *See United States v. Romero–Galue*, 757 F.2d 1147, 1150–51 n. 10 (11th Cir.1985) (noting that the district court "obviously had subject matter jurisdiction" because Congress, pursuant to § 3231, "conferred upon the federal district courts the power to adjudicate all cases involving crimes against the United States").

### III.

We review *de novo* the legality of a restitution order, but we review for clear error the underlying factual findings relevant to the order. *United States v. Brown*, 665 F.3d 1239, 1252 (11th Cir. 2011). A district court's authority to order restitution is conferred by statute. *Id.* The Mandatory Victim Restitution Act

9

("MVRA") requires the district court to order a defendant to pay full restitution if he is convicted of an offense in which an identifiable victim has suffered a pecuniary loss. 18 U.S.C. § 3663A(a)(1), (c)(1)(B); *Brown*, 665 F.3d at 1252. To be a "victim" under the MVRA, the entity must have suffered a harm that "directly and proximately" results from the commission of the defendant's offense. *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir.2007) (quotations omitted). The MVRA requires that the government establish the amount of a victim's loss by a preponderance of the evidence. *United States v. Futrell*, 209 F.3d 1286, 1290 (11th Cir. 2000); 18 U.S.C. § 3664(e).

As with his jurisdictional challenges, Cordell fails to adequately develop any arguments in his opening appeal brief to support his claim that the district court erred in ordering restitution. Specifically, he merely states some of his arguments before the district court and notes the court's rulings without further explaining his arguments on appeal or citing any statutes or case law related to the imposition of restitution. Cordell appears to suggest that, because he clearly presented his claims in the district court, we should review them on appeal. However, as discussed above, Cordell's preservation of an issue in the district court does not relieve him of the obligation to adequately develop arguments on appeal. *See Woods*, 684 F.3d at 1064 n.23; *Gupta*, 463 F.3d at 1195.

Regardless, even if Cordell had not abandoned his claims, he has not shown that the district court erred in ordering restitution. In the district court, Cordell argued that Pacific Indemnity is not entitled to restitution because it could have mitigated its losses by obtaining a security interest in the Old Mill Road property when it paid the mortgage on the property. Because Pacific Indemnity failed to seek title to the property, Cordell was able to sell it, and he received the $900,000 proceeds instead of Pacific Indemnity. The PSI states that Pacific Indemnity was not aware that Washington Mutual would release the lien on the property and that it delayed seeking the title to the property pending the arson investigation. Cordell's argument in the district court was that Pacific Indemnity lost its interest in the property, either intentionally or through neglect, and, thus, Cordell should not be required to pay restitution. Further, in his objections to the PSI, Cordell also argued that restitution was improper because Pacific Indemnity has obtained a civil judgment for more than the restitution amount.

The district court did not err in rejecting Cordell's arguments that Pacific Indemnity is not entitled to restitution. As an initial mater, Cordell has not provided, and research does not reveal, any binding authority establishing that a victim is not entitled to restitution if it does not attempt to mitigate its financial losses resulting from the defendant's illegal conduct. Under the MVRA, the district court was required to order Cordell to pay restitution for the full amount of

11

Pacific Indemnity's loss that "directly and proximately" resulted from his offense. *See Robertson*, 493 F.3d at 1334; 18 U.S.C § 3663A(a)(1); (c)(1)(B).  Here, the government proved by a preponderance of the evidence that Pacific Indemnity suffered a loss in the amount of $1,005,804.20 as a direct result of Cordell's bank fraud scheme.  *See Futrell*, 209 F.3d at 1290.  At sentencing, Agent Singh's testimony established that Cordell obtained a mortgage for the Old Mill Road Property for $1,000,000, he failed to make any payments on the mortgage, and, after the property burned down, Pacific Indemnity paid the mortgage in full. Further, the government presented evidence to show that the amount of Pacific Indemnity's check for the mortgage was $1,005,804.20.  Cordell admitted to keeping $900,000 in proceeds from selling the property, even though Pacific Indemnity had paid the mortgage pursuant to his insurance claim.

Regardless of whether Pacific Indemnity could have attempted to obtain the title to the property before Cordell sold it, his fraudulent conduct directly and proximately resulted in Pacific Indemnity's loss for the full amount that it paid to Washington Mutual.  *See Robertson*, 493 F.3d at 1334.  Additionally, even though a civil judgment has been entered against Cordell in Pacific Indemnity's favor, he has not alleged, either before the district court or on appeal, that he has paid any money towards satisfying that judgment.  Thus, the district court properly entered a

12

restitution order for the full amount of Pacific Indemnity's loss. 18 U.S.C

§ 3663A(a)(1); (c)(1)(B).

For the foregoing reasons, we affirm Cordell's conviction and sentence.

**AFFIRMED.**