[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13936
Non-Argument Calendar

_____

D.C. Docket No. 0:17-cr-60108-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFREDO WLADIMIR JARAMILLO BAQUE,
PIVITON PASTOR POSLIGUA GILER,

Defendants,

EGAR ABDIEL HERNANDEZ-BAILON,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(November 9, 2018)

Before WILSON, MARTIN, and HULL, Circuit Judges.

PER CURIAM:

Egar Hernandez-Bailon appeals his convictions for conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506(b) and 21 U.S.C. § 960(b)(1)(B), and possession with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a) and 21 U.S.C. § 960(b)(1)(B).  On appeal, Hernandez-Bailon argues that the district court erred in denying his motion to suppress evidence seized aboard the vessel on which he was found because the United States Coast Guard lacked reasonable suspicion to support the interdiction and boarding of the vessel.  The government urges us to dismiss Hernandez-Bailon's appeal as untimely because he did not file the notice of appeal within 14 days after the judgment was entered, as required by Rule 4 of the Federal Rules of Appellate Procedure.  FED. R. APP. P. 4(b)(1)(A).  We hold that the appeal was timely, and therefore deny the government's motion to dismiss, and affirm the district court's denial of Hernandez-Bailon's motion to suppress.

On December 27, 2016, a Coast Guard marine patrol aircraft detected a 30-foot "go-fast vessel" in international waters in the Eastern Pacific Ocean approximately 300 miles south of the Mexico/Guatemala.  The patrolman observed

2

that the vessel did not bear any signs of nationality and was traveling northbound unusually fast on a known drug-smuggling route. Furthermore, he noted that the type of vessel was most commonly used for fishing, but had two outboard engines, a large quantity of fuel on board, and a large tarp concealing objects in the middle of the vessel. After the patrolman reported the vessel, the Coast Guard dispatched a helicopter, an over-the-horizon intercept vessel, and a cutter[1] to investigate.

When the helicopter arrived at the scene, the vessel stopped without being ordered to do so. The helicopter crew observed "that the vessel had a tarp over the center, at least one bale wrapped in multicolored burlap-like material that had become uncovered by the tarp, fuel containers, three individuals, and twin 75 horsepower motors that were tiller steered with a PVC pipe modification." Furthermore, the helicopter crew verified that the vessel bore "no visible signs of nationality."

Upon arrival, the interceptor crew confirmed the helicopter crew's observations and, after reporting these observations, received authorization to conduct a "right of visit" boarding.[2] The boarding team discovered additional bales under the tarp that had "high flyers"—beacons commonly used by narcotics traffickers to find contraband after being jettisoned—attached to them. The

---

[1] A cutter is a light and fast coastal patrol boat.

[2] A "right of visit" boarding is "a doctrine of international maritime common law that bestows a nation's warship with the authority to hail and board an unidentified vessel to ascertain its nationality." *United States v. Romero-Galue*, 757 F.2d 1147, 1149 n.3 (11th Cir. 1985).

3

defendants identified themselves as Ecuadorian but would not confirm the nationality of the vessel itself. Based on this information, the Coast Guard authorized the boarding team to conduct a full law enforcement boarding. As a result, the boarding team discovered that the bales contained 900 kilograms of cocaine. The three people aboard the vessel, including Hernandez-Bailon, were arrested.

Hernandez-Bailon and his codefendants were charged with (1) conspiracy to possess with intent to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506(b) and 21 U.S.C. § 960(b)(1)(B), and (2) possession with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a) and 21 U.S.C. § 960(b)(1)(B). Hernandez-Bailon waived his right to a jury trial. At his bench trial, the district court denied Hernandez-Bailon's motion to suppress the cocaine, reasoning that the Coast Guard had reasonable suspicion to stop the vessel. On August 29, 2017, the district court entered judgment against Hernandez-Bailon and sentenced him to 120 months' imprisonment. Hernandez-Bailon filed his notice of appeal twenty days later, on September 18, 2017.

I.

The government argues that the appeal should be dismissed because the notice of appeal is untimely.  We disagree.

Here, the district court entered judgment on August 29, 2017.  The Federal Rules of Appellate Procedure would ordinarily require Hernandez-Bailon to have filed a notice of appeal by September 12—that is, 14 days after judgment was entered.  *See* FED. R. APP. P. 4(b)(1)(A).  However, the clerk's office was inaccessible due to Hurricane Irma from September 12 through September 17, so the time to appeal ran until Monday, September 18.  *See* FED. R. APP. P. 4(b)(1)(A), 26(a)(3) ("[If] the clerk's office is inaccessible . . . on the last day for filing . . . then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal Holiday . . . .").  Hernandez-Bailon timely filed the notice of appeal on September 18.  Accordingly, the motion to dismiss is denied, and the appeal may proceed.

II.

In reviewing a district court's denial of a motion to suppress, we review the district court's application of the law de novo and its factual findings for clear error, and consider the evidence in the light most favorable to the government. *United States v. Watkins*, 750 F.3d 1271, 1279, 1282 (11th Cir. 2014).

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. CONST. amend. IV. We have consistently applied a Fourth Amendment analysis to situations where the Coast Guard interdicts and boards a foreign vessel in international waters to check for the vessel's involvement in smuggling. *See United States v. Tinoco*, 304 F.3d 1088, 1116 (11th Cir. 2002). "Under the Fourth Amendment, the Coast Guard may stop and board a foreign vessel in international waters if it has reasonable suspicion that the vessel is engaged in activity that violates United States law." *Id.* "To determine whether reasonable suspicion exists, the court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Id.* An officer may assess the facts in light of his or her "unique training, expertise, and experience in the field." *Id.* Reasonable suspicion exists if the cumulative information known to the officer "suggests criminal activity, even if each fact, viewed in isolation, can be given an innocent explanation." *Id.*

The following factors, among others, may give rise to a reasonable suspicion that a vessel was engaged in drug smuggling: (1) a lack of nationality or other identifying marks; (2) travelling at an unusually high rate of speed; (3) presence in a known drug-smuggling area; and (4) a design that fits the profile of commonly-used drug-smuggling vessels. *See id.* at 1116–17; *United States v.*

6

*Reeh*, 780 F.2d 1541, 1544–46 (11th Cir. 1986).  Moreover, in cases involving

fishing vessels, we have concluded that the Coast Guard had reasonable suspicion

that the vessel was carrying contraband where the vessel was travelling outside of

normal fishing waters, *United States v. Pearson*, 791 F.2d 867, 870 (11th Cir.

1986), or had items on board that appeared unnecessary for an ordinary fishing

trip, *United States v. Andreu*, 715 F.2d 1497, 1500 (11th Cir. 1983).

The district court did not err in denying Hernandez-Bailon's motion to

suppress evidence found on the vessel because the Coast Guard had reasonable

suspicion to stop and board the vessel based on the vessel's design and its

structural modifications, which matched the profile of drug-smuggling vessels, its

high-rate of speed, its location several hundred miles offshore along a known

drug-smuggling route, the unknown cargo packaged in square shaped bales aboard

the vessel, and the lack of nationality or other identifying marks.  *See Tinoco*, 304

F.3d at 1116–17; *Reeh*, 780 F.2d at 1544–46.  Further, despite Hernandez-Bailon's

contention that the vessel was an ordinary fishing vessel, it had several atypical

characteristics, including two outboard engines and a large quantity of fuel on

board, in addition to its location several hundred miles offshore.  *See Pearson*, 791

F.2d at 870; *Andreu*, 715 F.2d at 1500.  Hernandez-Bailon maintains that, taken

individually, each of these circumstances may have an innocent explanation;

however, we are required to consider the factors together and, together, these

factors were sufficient to support the Coast Guard's reasonable suspicion of drug-smuggling activity.  *See Tinoco*, 304 F.3d at 1116.  Accordingly, the district court properly denied Hernandez-Bailon's motion to suppress.

**AFFIRMED.**